## HOGUE v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. November 22, 1910. On First Application for Rehearing, December 13, 1910. On Second Application for Rehearing, December 29, 1910.)

No. 2,014.

**1. PERJURY (§ 19\*)—INDICTMENT—REQUISITES.**

Since, as before, the enactment of Rev. St. § 1025 (U. S. Comp. St. 1901, p. 720), providing that no indictment shall be held insufficient for defects in matter of form only, and section 5396 (U. S. Comp. St. 1901, p. 3655), relating to indictments for perjury, every indictment for perjury in a federal court must contain allegations showing (a) judicial proceeding or course of justice; (b) that the defendant was sworn to give evidence therein; (c) the testimony given by him; (d) its falsity; and (e) its materiality to the issue or inquiry.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 65, 66, 70, 71; Dec. Dig. § 19.\*]

**2. PERJURY (§ 26\*)—INDICTMENT—DESCRIPTION OF OFFENSE—SUFFICIENCY.**

An indictment under Rev. St. § 5392 (U. S. Comp. St. 1901, p. 3653), charging the defendant with perjury in falsely swearing that material changes were made in a certain document before he signed it, is insufficient, where it does not show the substance at least of the change which it is charged that he testified was made.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 91; Dec. Dig. § 26.\*]

In Error to the District Court of the United States for the Northern District of Texas.

W. J. Hogue was convicted of a criminal offense, and brings error. Reversed.

The indictment against the plaintiff in error (who will hereafter be called the defendant) is as follows:

"At a regular term of the United States District Court for the Northern District of Texas begun and holden at Dallas, Texas, on the first Monday of May, A. D. 1909, which was the 3d day of said month, the grand jurors wherefor, good and lawful men, duly selected, impaneled, sworn, and charged to inquire into and a true presentment make of all crimes and offenses cognizable under the authority of the laws of the United States of America, committed within the Northern District of Texas, upon their oaths present into open court that heretofore, to wit, on the 2d day of February, A. D. 1909, there came on regularly for trial in the United States District Court for the

Northern District of Texas, before the Honorable Edward R. Meek, United States District Judge presiding, the cause of the United States versus W. J. Hogue, which said cause was then and there an indictment which had theretofore been duly returned by a grand jury in and for the Dallas Division of the Northern District of Texas, against the said W. J. Hogue for a violation of section 5480, as amended, of the Revised Statutes of the United States, to wit, for having devised a scheme and artifice to defraud, which scheme and artifice to defraud was to be effected by opening and intending to open correspondence in communication with various and sundry and divers persons in the United States, and in pursuance of such scheme and artifice, depositing and caused to be deposited in the United States postoffice at Dallas, Texas, for mailing and delivery, various and sundry and divers letters and packets;' and the said cause being regularly called for trial, and being regularly on trial before a duly impaneled petit jury and the Court and Judge aforesaid, to wit, on the second day of February, A. D. 1909, within the Dallas Division, to wit, in Dallas county, state of Texas, the defendant, the said W. J. Hogue, whose Christian name is to the grand jurors unknown, appeared therein as a witness, and took an oath before a competent tribunal, to wit, before the said United States District Court for the Northern District of Texas, the said oath being then and there administered in the said open court by L. C. Maynard, the duly constituted and appointed clerk of the said court, the said oath being this, to wit: 'Do you solemnly swear that the testimony which you are about to give in the case now on trial shall be the truth, the whole truth and nothing but the truth, so help you God?' and he, the said W. J. Hogue, after having taken said oath before the said tribunal in the said cause and in the said court, and on the said date and within the jurisdiction of this court, as aforesaid, did unlawfully, willfully, feloniously, and corruptly and contrary to such oath testify to a material matter in the said cause then and there being tried, which he did not believe to be true at the time of so testifying; that is to say, he, the said W. J. Hogue, after having been sworn as aforesaid before the said tribunal, and by the said officer and on the said date and within the said court and in the said cause and within the jurisdiction aforesaid, did unlawfully, willfully, feloniously, and corruptly and contrary to said oath, while holding a certain instrument which was dated 'Chicago, May 16, 1908,' and headed 'S. A. Buffington, Chicago, Ill., Dear Sir,' and comprising five pages and signed on one line of the last page, 'W. J. Hogue,' and on one line of the last page, 'S. A. Buffington,' testify that the written word 'out,' as the same appeared on the margin of the first page, and the written word 'out' as it appeared on the margin of the second page, and the written word 'out' as it appeared upon the margin of the third page, and the written word 'out' as it appeared upon the margin of the fourth page, and the written word 'out' as it appeared upon the margin of the fifth page, was in the handwriting of S. A. Buffington, and written and placed there by the said Buffington, before he, the said W. J. Hogue, had signed the same, and that the said word 'out' so appearing on the margin of the said pages was so placed there by the said Buffington, before he, the said Hogue would sign the same, and was so placed there to strike out the portion of each of said pages so embraced within the said word 'out'; that at the time aforesaid, when he, the said W. J. Hogue was testifying, he, the said W. J. Hogue, then and there well knew that the word 'out' was not written on the margin of said contract by the said S. A. Buffington, nor by any one else, at the time of the signing of the same said instrument, and he, the said W. J. Hogue, did not believe at the time of so testifying that the word 'out' had been written and was written on the margin of the pages of the said instrument hereinbefore mentioned by the said S. A. Buffington, or by any one else, at the time of the signing of the said instrument or prior thereto, and he, the said W. J. Hogue, in so testifying as hereinbefore set out, and at the time and place and within the court aforesaid, then and there well knew that he was testifying to what was not true, and did not believe he was testifying to what was true, and as a matter of fact, the word 'out' where the same appears written upon the margin of said instrument, was placed there months after the said instrument was signed, and was not placed there by the said Buffington, and that the said part of the said instrument and the paragraphs

thereof embraced within the written word 'out' where the same appears upon the margins aforesaid was not and were not struck out by the word 'out' or by any other method before the same was signed by the said W. J. Hogue, nor prior thereto, as the said W. J. Hogue then and there well knew, and he, the said Hogue, did not believe they were so stricken out; the said instrument herein mentioned and referred to being an instrument dated and directed as aforesaid, and purporting in substance to be a proposition by the said W. J. Hogue to the said S. A. Buffington, relating to the loan and borrowing of a large sum of money, and purporting to detail the names of the officers of a so-called Union Central Construction Company, the capital stock of said company, and other statements and matters relating to the condition of the so-called Union Central Construction Company, and the personal worth of the said W. J. Hogue, and purporting to detail assets of the said company and property of the said company, and concluding immediately above the signature of the said W. J. Hogue, with these words: 'If, after examination of the properties hereinabove referred to, and investigation of the matter hereinabove warranted to be true, you shall be dissatisfied and not willing to make or procure said loan of $15,000, without fault on my part or the fault of said Union Central Construction Company, then this proposition to be null and void, and of no effect,' and the testimony of the said W. J. Hogue, as aforesaid, was material to and in the issue and said cause and about a material matter in the issue and cause being tried, as aforesaid, before the tribunal and court aforesaid, in this: that the said scheme and artifice to defraud charged in the said bill of indictment related to and was concerned with a so-called Union Central Construction Company, with which the said W. J. Hogue was concerned, all of which he, the said W. J. Hogue, as aforesaid, then and there well knew at the time of so unlawfully, willfully, feloniously, and corruptly testifying, and the jurors aforesaid upon their oaths aforesaid say that the said W. J. Hogue did commit willful and corrupt perjury in the manner and form hereinbefore set out, all of which was contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The defendant demurred to the indictment, alleging many grounds of demurrer, and, among others, the following:

"(a) Said indictment fails to set forth the substance of the false statements alleged to have been made by the said W. J. Hogue, and wholly fails to disclose to this defendant wherein his said testimony is alleged to be false.

"(b) Said indictment is wholly insufficient in itself and of itself to apprise this defendant of the nature of the charge against him.

"(c) This indictment is wholly insufficient to charge the defendant, W. J. Hogue, with knowledge or notice of the false statements alleged by him to have been made.

"(d) Said indictment fails to set out by innuendo or otherwise the false statements alleged to have been made, and wholly fails to show the materiality of the same upon the trial of said cause, in which it is alleged that he swore falsely.

"(e) This indictment is defective in this fundamental requirement that the defendant shall in the allegations of the indictment alleging perjury be apprised of what he is called upon to defend."

The court overruled the demurrer. The defendant was convicted. A motion was made in arrest of judgment, which was also overruled. The defendant sued out a writ of error, and in this court it is assigned that the District Court erred in overruling the demurrer to the indictment.

J. W. Kearby, for plaintiff in error.
Wm. H. Atwell, U. S. Atty.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge (after stating the facts as above). The indictment shows that the defendant, Hogue, had been tried for a violation of section 5480 of the Revised Statutes (U. S. Comp. St.

1901, p. 3696) for having devised a scheme or artifice to defraud to be effected by using the mail. On that trial he testified as a witness for himself, and the charge of perjury is based on his testimony given in that case. The document about which he testified was presumably relevant to the issues on his trial for violation of the postal laws. It is not shown that there was any controversy as to the original contents of, or the signatures to, the document. The indictment indicates that the alleged false evidence, so far as it was material, related alone to the question of whether or not the document had been changed or amended by eliminations before it was signed by the defendant.

The general question to be decided is whether or not the indictment contains a sufficient charge of perjury. The English and American books on criminal law show that great precision and certainty has been required to write an indictment for perjury. So many indictments for this offense failed under the scrutiny of the courts that statutes have been passed in England and America to eliminate many of the requirements that were considered too exacting. But there remains as inherent in the subject a requirement for certainty and particularity in the statement of the substance of the offense intended to be alleged—a requirement that the facts constituting the crime should be sufficiently stated to apprise the defendant of the substance of the offense charged against him. The federal statute defining perjury is simple and plain, but it preserves' all the essential elements of the crime, and plainly requires that the false oath shall relate to a "material matter." Rev. St. § 5392 (U. S. Comp. St. 1901, p. 3653). It is provided in another statute that indictments for perjury may dispense with the recital of specified records and proceedings that were at common law often held to be necessary parts of the indictment. But this statute shows that the indictment should "set forth the substance of the offense charged upon the defendant, * * * together with the proper averment to falsify the matter wherein the perjury is assigned." Rev. St. § 5396 (U. S. Comp. St. 1901, p. 3655). We have another statute, not confined to perjury, which provides that no indictment shall be deemed insufficient because of any defect in matter of form, but it does not seek to dispense with matters of substance. Rev. St. § 1025 (U. S. Comp. St. 1901, p. 720). It remains a fundamental requirement that the substance of the crime sought to be charged must be stated in the indictment, and so stated that the defendant, from the allegations of the indictment, may understand what he is called upon to defend. This is a constitutional requirement. Const: Amend. 6.

Since, as before, the statutes, every indictment for perjury must contain allegations showing (a) judicial proceeding or course of justice; (b) that the defendant was sworn to give evidence therein; (c) the testimony given by him; (d) its falsity; and (e) its materiality to the issue or inquiry. The averments, therefore, are necessarily of two classes: First, those which disclose the foundation for the commission of the offense; and, second, those which charge the offense itself. The first, constituting the inducement, may be general in terms, but the second—the charge of the offense itself—must be direct and specific, intelligible, and plain. It is the second class of the

allegations to which our attention must be directed, and especially the attempted description of the alleged false testimony of the defendant. As to that part of the indictment, notwithstanding the statutes to which we have referred, reasonable fullness and particularity are required, for it pertains to the very gist of the offense. 2 Bishop's New Criminal Procedure, § 916.

The indictment is copied in full in the statement of the case, but it is well to repeat here the part of it which in charging the offense describes the defendant's testimony. It charges that the defendant did—

*"testify that the written word 'out,' as the same appeared on the margin of the first page, and the written word 'out,' as it appeared on the margin of the second page, and the written word 'out' as it appeared on the margin of the third page, and the written word 'out' as it appeared upon the margin of the fourth page, and the written word 'out' as it appeared upon the margin of the fifth page, was in the handwriting of S. A. Buffington, and written and placed there by the said Buffington before he, the said W. J. Hogue, had signed the same, and that the said word 'out' so appearing on the margin of the said pages was so placed there by the said Buffington before he, the said Hogue, would sign the same, and was so placed there to strike out the portion of each of said pages so embraced within the said word 'out.'"*

The defendant is charged with swearing falsely in reference to a certain instrument in writing which he held in his hand while testifying. The instrument is described by giving its date, address, by whom signed, and part of its contents, especially the first and last part of it. It appears that it contained at least five pages. The alleged false testimony relates to the condition and contents of the document when it was signed by the defendant. The charge intended to be made was that the defendant had falsely sworn that before he signed the instrument certain portions of it had been stricken out, or taken out of the instrument, probably by including such portions in brackets or parentheses, and writing the word "out" on the margin opposite the portions so taken out of the document. This false testimony, it is alleged, was material. The word "out" on the margin would be entirely immaterial, unless it was so used as to make some material change in the document. It is alleged that the word was written on the margin of each one of five pages of the document, but we search the indictment in vain to learn what part of the instrument, if any, was eliminated by the use of the word. It does not show whether its effect was to eliminate one word, or twenty, or more, and consequently it does not show whether the change effected in the document, if any, was material or immaterial. It is alleged that the defendant testified that the word "out" so appearing on the margin of said pages was so placed there "to strike out the portion of each of said pages so embraced within the said word 'out.'" It in no way appears in the indictment what portion was *"embraced within the word 'out'"*—whatever that may mean. The learned United States attorney in the brief before us explains that at the time the alleged perjury was committed and the document was introduced in evidence it had the "penciled words 'out' and the parentheses around certain paragraphs. * * *" And the district attorney discusses the materiality and importance of the part of the document included in the parentheses, and adds:

"It thus appears that the testimony of Hogue, with reference to the word 'out' and the parentheses, was of the utmost materiality in the fraudulent use of the mail case."

But none of this appears in the indictment. It does not show that any parentheses, or other means, were used to show what was referred to by the word "out," and does not in any way show the substance of the part of the document, if any, that the defendant is charged with swearing was stricken out or eliminated before he signed it. In brief, it is charged that Hogue testified that by the use of the word "out" certain portions of the document were eliminated before it was signed by him, but the indictment does not in any way show what portions were so eliminated. It gives the defendant no notice of the substance of his alleged testimony as to eliminations. He could not read the indictment, and tell what changes he was charged with having sworn had been made in the document. The word "out," in the margin by itself, has no significance or importance. It was immaterial, on the issues in the first case, whether it was in the margin once or five times, or whether Buffington wrote it or Hogue wrote it. It was only material if it indicated that a part of the document was stricken "out." Read as you may the elaborate indictment and the very many statements and descriptions of parts of the document, no hint is found of the words, phrases, or sentences, if any, that Hogue is charged with having sworn were eliminated before he signed the instrument. The only foundation for a surmise or guess on the subject is the averment that the word "out" was so placed "to strike out the portion of each of said pages so embraced within the said word 'out.'" If we assume that the word "out" can embrace a portion of a page, we cannot tell from the indictment what part was so embraced, or what words of the document appeared on such part.

The gist of the charge is that the defendant falsely swore that material changes were made in the document before he signed it. The defect is that it is not shown what changes he swore were made. This is a matter of substance. It is the very pith of the alleged falsehood. The indictment should be so written that the defendant and the court, on reading it, could tell the substance at least of the change which it is charged that the defendant testified was made in the paper before he signed it.

The witnesses when they appeared before the grand jury may have testified that Hogue swore to the elimination of certain parts of the document, and the grand jury, finding that Hogue's statement was false, may have voted to indict him. The petit jury may have come to the conclusion that Hogue's statement as to that part of the document was true, but may, on the evidence before them, have convicted him of perjury for swearing that some other portion of the document had been eliminated before he signed it. And in this way the defendant, on an indictment failing to state the substance of the alleged testimony as to alterations, might be convicted of a matter in relation to which he had never been indicted. State v. Mace, 76 Me. 64, 66. An indictment that would permit such a result cannot be sustained. The District Court erred in overruling the demurrer to the indictment.

There are many other assignments of error raising grave and im-

portant questions as to the conduct of the prosecution by the United States attorney, and as to the rulings of the trial court during the progress of the case. In view of our conclusion that the indictment is fatally defective, we find it unnecessary to decide the other questions.

The judgment of the District Court is reversed, and the cause remanded, with instructions to sustain the demurrer to the indictment.

## On First Application for Rehearing.

PER CURIAM. The petition for rehearing herein does not comply with our rule 29, and is mainly made up of irrelevant and immaterial statements in relation to matters outside the record and which are tinged with impertinence and disrespect to the court.

It is therefore ordered taken from the files; and, that the United States may not be prejudiced, the mandate of the court will be stayed until January 2, 1911, to afford an opportunity to apply for a rehearing in accordance with the rules of court.

## On Second Application for Rehearing.

SHELBY, Circuit Judge. In the application for a rehearing it is admitted that an indictment for perjury must show conclusively that the testimony given by the defendant and alleged to be false was material on the trial in which he was sworn; and it is said that this may be done "either by a direct allegation that it was material, or by the allegation of facts from which its materiality will appear."

The defect found in the indictment is not in the manner in which the materiality of the evidence is alleged. The defect is that the indictment does not state the alleged false testimony of the defendant. The opinion directs especial attention to the "attempted description of the alleged false testimony of the defendant"; and all that is said is meant to point to that defect.

If the indictment had been so written as to show the substance of the defendant's testimony which was alleged to be false, it would have been sufficient. What the defendant said on his examination is the basis and pith of the charge against him. Evidently it was intended to indict him for swearing that eliminations were made in a document consisting of five pages, and, therefore, no understanding of the substance of his alleged false testimony can be had unless it appears substantially what changes he testified had been made. The writer of the indictment seemed to comprehend this, but utterly failed in the effort to designate the changes. Whether it was intended by the indictment to disclose the materiality of the testimony by an allegation that it is material, or by statements from which its materiality may be inferred, if it be assumed that either mode is sufficient, the indictment must show substantially and in intelligible language what it is that the defendant is charged with having sworn.

It appears clearly from the indictment, we think, that it was intended, and that an attempt was made, to charge that defendant swore that changes had been made in a document, and to state what changes he swore were made; but, through inadvertence, the allegations are wholly insufficient for this purpose. But if we assume that the in-

dictment charges literally what was intended to be charged, and that it sets out all of the evidence alleged to be false, then the indictment is insufficient, because it affirmatively appears that what is set out, so far as it can be understood, is wholly immaterial on the issues of the trial in which defendant was testifying.

The application for a rehearing is denied, and mandate may issue immediately.

### NOTE.

The first application for a rehearing, which was ordered taken from the files, contained the following:

"I would not be so certain in my position, had I not given the authorities an exhaustive search, both before the drawing of the indictment, during the trial, and in the preparation of my brief. I did this because Hogue is one of the most reckless criminals it has ever been my misfortune to prosecute. Ruthlessly, mercilessly, and untruthfully he attempted to stab one of the cleanest, purest men I ever knew upon the Bench, and this was but natural with Hogue, and so it was when he committed perjury in defense of himself in the fraudulent use of the mail case. It was a consummate attempt to grasp the last opportunity and save himself from what he saw must come. That a case so clearly proven, even to the satisfaction of that portion of the public who were at first doubtful, can be reversed upon a technicality, and an infamous perjurer turned loose, is more than the average layman can understand."