## WIÉNER et al. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit.   July 14, 1922.)

No. 2798.

1. **Criminal law ⬩⟶308—Every person presumed innocent until guilt proved.**

Every person is presumed to be innocent until his guilt is proved beyond a reasonable doubt, and this presumption is evidence in his favor, introduced by the law in his behalf.

2. **Conspiracy ⬩⟶47—Evidence held insufficient to sustain conviction of conspiracy to violate Harrison Narcotic Act.**

In a prosecution for conspiracy to violate the federal laws by the unlawful sale of opium under the Harrison Narcotic Act (Comp. St. §§ 6287g–6287q), where the only overt acts proved were that the defendants, who purchased opium under license duly issued by the collector of internal revenue, attempted to, but did not, sell it, and later left it in the hallway adjoining their place of business, and reported to the police that it had been stolen, naming the suspect, *held* insufficient to sustain a conviction.

In Error to the District Court of the United States for the Middle District of Pennsylvania; Charles B. Witmer, Judge.

Joseph Wiener and others were convicted of conspiracy to violate the laws of the United States, and they bring error.   Reversed.

Thomas A. Donahoe, of Scranton, Pa., and Frank T. McCormick, of Wilkes-Barre, Pa., for plaintiffs in error.

Andrew B. Dunsmore, U. S. Atty., of Wellsboro, A. A. Vosburg, Asst. U. S. Atty., of Scranton, Pa., and Herman Reich, Asst. U. S. Atty., of Sunbury, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.   The defendants are seeking to reverse the judgment of the District Court, in which they were convicted for conspiracy to sell 20 pounds of opium, not in pursuance of written orders of the purchasers on forms issued for that purpose by the Commissioner of Internal Revenue.   Joseph Wiener is the father of the other two defendants.   The government charges and sought to prove the following facts:   Joseph and Abram kept a small grocery store in their home at 103 Hickory street, Wilkes-Barre, Pa.   On or about December 2, 1920, Abram Wiener made application to the collector of internal revenue at Scranton to be licensed as a dealer in opium and other narcotics under the firm name of Joseph Wiener & Son.   The license was granted, and Joseph and Abram became registered dealers.   This license was renewed, and again on July 1, 1921, they registered with the collector at Scranton as dealers in narcotics.   On July 12, 1921, they ordered from the firm of Merck & Co., New York, 20 pounds of opium, which they received two days later.   On July 25th they took this to New York to sell, but did not do so, and on the 27th they returned with it, and the next day Joseph put it into a traveling bag and set it in a hallway adjoining the store.   On that day Sam Wiener, who did not live at home, with his employer, a man by the name of Baker, visited

his father's home, and while there Sam showed Baker the bag containing the opium. On August 1, 1921, the defendants, or some of them, reported to the police of Wilkes-Barre that the opium had been stolen and that they suspected Baker of having done it.

The government charges the defendants with conspiracy to sell opium in violation of the Harrison Narcotic Act (Comp. St. §§ 6287g–6287q), and set out the above facts as overt acts done by the defendants to effect the object of their conspiracy. All the facts alleged may be true, but the proof is meager, and the conclusions to be drawn therefrom questionable. The record does not disclose any evidence establishing that the defendants ordered opium from Merck & Co. on July 12, 1921, or that they received it two days later. They did, however, get it from some place; but the evidence is silent as to the place. The only evidence to prove that they went to New York to sell it on July 25, 1921, and returned on July 27th, is found in a single statement made by Leonard Sudack. He testified that Sam Wiener and Baker were in his room one night "talking about opium," and, on being asked what they said, he replied:

"They were talking that they would go to New York to sell it, and they went a couple of times to New York to sell it."

But it is difficult, if not impossible, to determine who went, and when they went, if at all, and what opium they took with them. If, however, they were speaking of the 20 pounds of opium mentioned in the indictment, and if the pronoun "they" refers to the defendants, and they went on July 25, 1921, and returned two days later, this testimony was stricken out by the trial judge, and is therefore not before us. The following is the testimony:

"Q. Where was Baker? A. I was laying on the bed, and Baker and Wiener came in and started to talk about the opium.
"Q. Did they sit down? A. Yes, sir.
"Q. Were they smoking? A. Yes, sir.
"Q. Go on and tell us what they said. A. They were talking about opium.
"Q. Who were? A. Baker and Sam Wiener.
"Q. What did they say? A. They were talking that they would go to New York to sell it, and they went a couple of times to New York to sell it.
"Mr. Donahoe: We ask to have that stricken out.
"The Court: That may be stricken out."

All that there is left, therefore, from which to establish a conspiracy, are the first, sixth, seventh, and eighth overt acts set out: Registering as dealers in narcotics under the circumstances, placing the bag containing the opium in the hallway, showing it to Baker and informing him of its contents, and reporting the alleged theft to the police of Wilkes-Barre.

Registration as a dealer in narcotics and keeping a grocery store may be bringing together incongruous businesses, and therefore suspicious; but there does not appear to have been any suppression of facts or deception practiced by the defendants in registering and becoming authorized dealers in narcotics, and since the government permitted and apparently sanctioned the union of incongruous businesses, it is a serious question as to whether or not registration is a fact from which a legitimate inference of guilt may be drawn.

That Joseph Wiener placed the bag containing the opium in a hall in his home, and that his son Sam informed Baker that the bag contained opium, may be part of the plan to carry out a conspiracy. On the other hand, they may be simple acts of carelessness, such as people innocent of any wrongdoing whatever are constantly committing.

Reporting the alleged theft of the opium to the police was the natural, practical, and sensible thing to do, if the opium was actually stolen. The larceny of the opium was the consummation of the conspiracy, according to the government, and the crux of this case. If it was not stolen, the judgment of the District Court was right, and should be affirmed; but, if it was stolen, the conspiracy built up by the government falls, and the judgment should be reversed. This final act in effecting the object of the alleged conspiracy may serve as a commentary on the other three overt acts. If the evidence as to the theft justifies the conclusion that the opium was not stolen, it naturally follows that there was a conspiracy, and the other overt acts were steps taken to carry it out. If, however, the evidence does not justify such conclusion, the other overt acts are insufficient.

[1] If the evidence is as consistent with the theory that the opium was stolen as it is with the theory that it was not stolen, the motion for binding instructions, for the reason that the allegations in the indictment had not been proved, should have been granted, and defendants' first point, that they could not be convicted under the evidence in the case, should have been affirmed. Every person is presumed to be innocent until his guilt is proved beyond reasonable doubt. The presumption of innocence is evidence in favor of the accused, introduced by the law in his behalf. This principle is "axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."

"It is a maxim which ought to be inscribed in indelible characters in the heart of every judge and juryman." Coffin v. United States, 156 U. S. 432, 453, 456, 15 Sup. Ct. 394, 404 (39 L. Ed. 481).

"Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction." Union Pacific Coal Co. v. United States. 173 Fed. 737, 740, 97 C. C. A. 578, 581; Wright v. United States, 227 Fed. 855, 857, 142 C. C. A. 379.

In the case of Hart v. United States, 84 Fed. 799, 808, 28 C. C. A. 612, 621, Judge Acheson, of this court, said:

"Now it is a familiar rule in criminal cases that, to justify a conviction upon circumstantial evidence, the inculpatory facts must be incompatible with the innocence of the accused, and incapable of explanation upon any other reasonable hypothesis than that of his guilt."

[2] No one knows whether or not the opium was stolen. There is not a word of testimony that it was not. The defendants reported that it was, and their report stands uncontradicted. They not only reported that it had been stolen, but they gave the name of the man whom they suspected, Baker, the friend and employer of Sam Wiener, and he at once disappeared from Wilkes-Barre.

282 F.—51

The government sought to have the jury infer that there was a conspiracy, and that Baker became a part of it and stole the opium. If there was a conspiracy, why should the defendants accuse Baker, the employer of Sam, and one of their co-conspirators, who aided in carrying it out? If he was one of their number, confederating with them, why report him? They could have reported somebody else, or accounted for the disappearance of the opium in some other way, and every natural motive would have prompted them to do so, and not implicate a co-conspirator in their report to the police. The disappearance of Baker is unaccounted for. The fact that he left town immediately after the opium was missed indicated that he, knowing that it was in the bag, stole it. That he stole it seems just as probable as that he did not. All of the facts established by the evidence are in themselves lawful. At most, they create suspicion only. They are not incompatible with innocence, and do not exclude every other hypothesis than that of guilt.

We are of opinion that, under all the evidence in the case, the defendants should not have been convicted of conspiracy as charged in the indictment.

The judgment of the District Court is reversed