# CASES

## ARGUED AND DETERMINED

### IN THE

## CIRCUIT COURTS OF APPEALS AND DISTRICT COURTS OF THE UNITED STATES, AND COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### McLAUGHLIN v. UNITED STATES.

### HORGAN v. SAME.

Circuit Court of Appeals, Third Circuit.
March 7, 1928.

Rehearing Denied May 24, 1928.

Nos. 3720 and 3726.

1. **Conspiracy ⚖=47—Evidence held sufficient to warrant conviction for violating and conspiracy to violate liquor laws (National Prohibition Act [27 USCA]).**

In prosecution for conspiracy to manufacture, possess, sell, and transport moonshine whisky, and for the same substantive offenses, in violation of National Prohibition Act (27 USCA), evidence *held* sufficient to sustain conviction of one of defendants, who was member of borough council.

2. **Criminal law ⚖=742(1)—Credibility of government's witnesses in prosecution for violating and conspiring to violate National Prohibition Act held for jury (27 USCA).**

In prosecution for conspiring to violate National Prohibition Act (27 USCA), and for committing substantive offenses in violation of such act, credibility of government's witnesses *held* for jury.

3. **Criminal law ⚖=448(4)—Testimony that committee was appointed to determine who should run slot machines or "mooney dives," held conclusion; witness' other testimony showing absence when purpose was declared.**

In prosecution against members of borough council and others for violating and conspiring to violate National Prohibition Act (27 USCA), testimony of one of members of council that advisory committee was appointed to determine who should be allowed to run slot machines or "mooney dives" *held* mere conclusion of witness, in view of his previous statement that he had left meeting before purpose of committee was stated.

4. **Conspiracy ⚖=48—Evidence held insufficient to go to jury on question of conspiracy to violate and violations of National Prohibition Act as respects member of borough council (27 USCA).**

In prosecution for conspiracy to manufacture, possess, sell, and transport moonshine whisky, and for the substantive offenses, in violation of National Prohibition Act (27 USCA), evidence *held* insufficient to go to jury as respects one member of borough council.

5. **Criminal law ⚖=753(2)—Unless substantial evidence excludes every other hypothesis than that of guilt, court must instruct verdict for accused.**

Unless there is substantial evidence of facts which exclude every other hypothesis than that of guilt, it is duty of trial court to instruct the jury to return a verdict for accused.

6. **Criminal law ⚖=1159(2)—Appellate court must reverse judgment of conviction, where all substantial evidence is as consistent with innocence as with guilt.**

Where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of appellate court to reverse judgment of conviction.

In Error to the District Court of the United States for the Western District of Pennsylvania; Robert M. Gibson, Judge.

George McLaughlin, otherwise known as "Scotty" McLaughlin, Samuel T. Horgan, and others were convicted of conspiring to manufacture, possess, sell, and transport moonshine whisky, and of committing the substantive offenses, and the named defendants bring error. Affirmed as to defendant Horgan, and reversed as to defendant McLaughlin.

Harry A. Estep, of Pittsburgh, Pa., for plaintiff in error McLaughlin.

John M. Henry, of Pittsburgh, Pa., for plaintiff in error Horgan.

John D. Meyer, U. S. Atty., and Joseph A. Richardson, Asst. U. S. Atty., both of Pittsburgh, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. The plaintiffs in error were indicted with 16 or 17 others for

26 F.(2d)—1

conspiring to manufacture, possess, sell, and transport moonshine whisky, and also for the substantive offenses of manufacturing, possessing, selling, and transporting the same, in violation of the National Prohibition Act (27 USCA). On the trial, McLaughlin and Horgan, with 7 others, not here on this writ of error, were found "guilty on all counts."

[1] The writ is based upon 26 assignments of error, but all of them "revolve around a single proposition, that the evidence is not sufficient to support the verdict of guilty." It thus becomes necessary to examine the evidence itself on which the government relies to sustain the judgments.

It showed that vice generally was winked at and everything was running wide open in the borough of Homestead, Pa., and that Joe Franks and Sam Stein, two of the defendants, were engaged in the bootlegging business in and about the borough. The government contends that the majority of the council of the borough, including McLaughlin and Horgan, had agreed with these alleged bootleggers to protect them for a money consideration, though it was not shown by any competent evidence that any money was actually paid by them to any councilman.

We have considered the entire evidence cited by the government to sustain the judgment against Horgan. On a fair construction, according to well-established legal principles, we do not think, with the exception of the following testimony, which alone expressly or by fair legal inference relates to the National Prohibition Act, that it is sufficient:

Lawrence J. Albiez had been captain of police in the borough for a number of years before January 1, 1926, when he was demoted. Shortly thereafter, one night Horgan went to see him to sell him a life insurance policy, and Albiez asked him why he had "talked against" him as captain of police. According to Albiez, he replied: "We have to have a man there who will make money for us. You was too hard on bootleggers." This was corroborated by Mrs. Albiez and Mrs. Carmelita Baker, sister-in-law of Albiez.

In August or September following, at the office of the borough clerk, Harry C. Broadus, commonly known as Pal Broadus, a notorious character, who kept cabarets and bawdyhouses, testified that he asked Horgan if he knew that beer was coming into Homestead, and that Horgan replied: "Yes; leave it alone." Upon being asked if he knew who was bringing it in, he said: "Yes; we fixed that all right with Mr. Jenkins, captain of police. They pay him $3 a barrel."

[2] While Broadus is a low, disreputable fellow, the acknowledged controller of the bawdyhouse business in Homestead, and should be in jail, yet his testimony and that of Mr. and Mrs. Albiez and Mrs. Baker, if believed, is sufficient to sustain the judgment against Horgan. The credibility of these witnesses was, under proper instructions of the court, a question for the jury. It evidently believed them, and returned its verdict accordingly, and the judgment as to Horgan is affirmed.

[3] The government cites the following evidence to sustain the judgment against McLaughlin:

1. The testimony relating to an organization meeting of the majority of the council the latter part of May in 1926.

The purposes of the meeting according to the government witnesses were "to regulate things, to tell who was to be allowed to do this and who was to be allowed to do the other thing"—"to get things regulated, so that everybody would get their share." At that meeting an advisory committee consisting of McLaughlin, Horgan, and James L. Oates was appointed. Councilman Honse, who was at that meeting, testified for the government, as to the appointment of the committee, and, upon being asked what the purpose of the advisory committee was, said: "Well, my idea of it was that they were to —" He was interrupted before he finished the sentence by the trial judge, who said he wanted to know "what was said and done." When again pressed as to what the function of the committee was, he said: "Well, I don't know what—I left then." When still further pressed by the court, he said it was "to tell who was allowed to run any slot machines, or mooney dives; that was their job to do."

It is clear that this testimony is a mere conclusion of the witness. It is what he had said it was, a statement of what "my idea of it was." He had testified a moment before that he did not know what the purpose of the committee was, and that he left before the purpose was stated. The court urged him to tell just what was said and done, but he did not or could not do so. That this meeting was not regarded by the district attorney, court, nor jury as sufficient to justify a conviction is evidenced by the facts that Delaney, who presided over the meeting, and other councilmen who were present, were neither indicted nor used as wit-

nesses; that the court directed a verdict of not guilty as to some who were present, and the jury acquitted others. If the conspiracy existed at that time, and this meeting was part of it, as the government contends, neither the court nor jury could acquit those who were present and took part in it, unless it was clearly shown that they abandoned the conspiracy before any overt act was done to effect its object. But this they could not have done, for it is charged that the conspiracy existed from July 1, 1925, and the meeting itself would constitute an overt act, if the government's contention be true.

[4] 2. The conversation between Broadus and McLaughlin about closing up the town.

Broadus testified that he told Councilman Richards that "there is two or three people around here want to do business," and that they were willing to "kick in." It appears that Richards told McLaughlin about this conversation with Broadus, and the next night McLaughlin called Broadus on the phone and, according to Broadus, the following conversation took place between them: ·

"Q. What did Mr. McLaughlin say? A. He says, 'You was talking to Rich?' I said, 'Yes.' He says, 'Well, does them people want to pay?' I said, 'They all want to open.' He says, 'All of them wants to open; what do they want to do?' · I said, 'I don't know, they want to know what you want to do.' Do you want me to go on with the conversation?

"Q. Yes; go on with the conversation. A. He says, 'What do you think them people ought to pay up there?' 'They ain't going to pay nothing.'

"Q. You said that? A. Yes. He says, 'Well, they have to do something.' 'Well,' I says, 'it is up to you all. What do you want to do?' 'Well,' he said, 'the houses—that is, the women—should pay $25 a week, and all cabaret and clubs should pay $50 a week.' That was the end of our conversation."

Broadus further said:

"A. He came to me with a list and told me who could run.

"Q. Who came to you with a list? A. Richards and McLaughlin, and they sanctioned it, and didn't put McPherson on, and didn't want McPherson to run. I said, 'This thing ain't going to do.' I said, 'Let Jew run;' that is, McPherson, sitting over there now. He went away with the list, and came back and didn't have McPherson on, and I said, 'That won't do.' I went around and collected $193 and something, and they told McPherson not to run, and for Theodore to run.

"Q. Who is Theodore? A. That is Theodore, sitting back there (indicating).

"Q. Theodore Karamelas? A. Yes.

"Q. Did you tell Mr. McPherson? A. I told him. Then he said McLaughlin wanted me and McPherson to go in together.

"Q. Did you go in together? A. No; I told him—well, he wanted to go on by himself, and I will go on by myself. I told him to wait until I got the money in my hand, and then for them to go to hell."

This is the entire testimony on which the government relies and has cited in support of the judgment. There is not a word in this testimony about an agreement to violate the National Prohibition Act. Whether a gambling den, a bawdyhouse, a dope joint, or what was to be protected by the alleged conspirators is left to pure inference, and it is just as reasonable that some state law alone was to be violated as a federal law.

[5, 6] Unless there is substantial evidence of facts which exclude every other hypothesis than that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction. Hart v. United States (C. C. A.) 84 F. 799; Union Pacific Coal Co. v. United States (C. C. A.) 173 F. 737, 740; Wright v. United States (C. C. A.) 227 F. 855, 857; Wiener et al. v. United States (C. C. A.) 282 F. 799, 801; Yusem v. United States (C. C. A.) 8 F.(2d) 6; Ridenour v. United States (C. C. A.) 14 F.(2d) 888. The evidence as to McLaughlin does not exclude every other hypothesis than that of conspiracy to violate the National Prohibition Act. It may be that there was a conspiracy to violate some law, but it has not been shown, and we are not to infer, unless the substantial evidence excludes every other reasonable hypothesis, that McLaughlin conspired to violate the Volstead Act, rather than state laws. All the evidence against him is consistent with the hypothesis that the state law alone was involved. Under this state of the record, our duty is clear.

The judgment as to McLaughlin is reversed.