## DANAHER v. UNITED STATES.
### No. 8023.

Circuit Court of Appeals, Eighth Circuit.
Feb. 24, 1930.

STONE, Circuit Judge, dissenting.

Donald G. Hughes, of Minneapolis, Minn. (W. H. McDonald, of Minneapolis, Minn., on the brief), for plaintiff in error.

John S. Pratt, Sp. Asst. to Atty. Gen. (Lafayette French, Jr., U. S. Atty., of Austin, Minn., on the brief), for the United States.

Before STONE and LEWIS, Circuit Judges, and MARTINEAU, District Judge.

LEWIS, Circuit Judge.

Danaher was convicted on seven counts of an indictment each of which purported to charge him with subornation of perjury. Sections 231 and 232 of title 18 USCA. By making the terms cumulative he was then sentenced to confinement in the penitentiary for 23 years.

Section 231 reads:

"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, shall willfully and contrary to such oath state or subscribe any material matter which he does not believe to be true, is guilty of perjury."

And section 232 reads:

"Whoever shall procure another to commit any perjury is guilty of subornation of perjury."

■ Of course, the strict rules of the common law, in charging perjury, do not now obtain, either in England or here. Under those rules, where perjury was committed in court, it was necessary to set out in the indictment the title of the cause in which the witness was sworn and testified, the record and all of the pleadings therein, thus disclosing jurisdiction and the issue, as a guide to the determination of the question whether the testimony of the witness charged to be false was material. The commission of the officer before whom the oath was taken was also set out. But by statute that is not now necessary. Section 558 of title 18, USCA, prescribes:

"In every presentment or indictment prosecuted against any person for perjury, it shall be sufficient to set forth the substance of the offense charged upon the defendant, and by what court, and before whom the oath was taken, averring such court or person to have competent authority to administer the same, together with the proper averment to falsify the matter wherein the perjury is assigned, without setting forth the bill, answer, information, indictment, declaration, or any part of any record or proceeding, either in law or equity, or any affidavit, deposition, or certificate, other than as hereinbefore stated, and without setting forth the commission or authority of the court or person before whom the perjury was committed."

Also section 559 of said title:

"In every presentment or indictment for subornation of perjury, it shall be sufficient to set forth the substance of the offense charged upon the defendant, without setting forth the bill, answer, information, indictment, declaration, or any part of any record or proceeding either in law or equity, or any affidavit, deposition, or certificate, and without setting forth the commission or authority of the court or person before whom the perjury was committed, or was agreed or promised to be committed."

■ The sufficiency of the seven counts in this indictment and the question whether they stated any offense against Danaher must be tested by these sections. The counts are all couched in the same language with the exception that in five the oath is alleged to have been taken before a named commissioner of the District Court of the United States for the District of Minnesota, and two of them before a named deputy clerk of said court. All counts except one set forth the alleged false affidavit. It will therefore be necessary to only set out verbatim one count. It charges that Danaher " * * * unlawfully did willfully and corruptly suborn, instigate and procure one Harvey Schell to appear in person before H. D. Irwin, then and before that time being a Commissioner of the District Court of the United States for the District of Minnesota, and then and there did willfully and corruptly suborn, instigate and procure said Harvey Schell to make affidavit in writing before the said H. D. Irwin, Commissioner as aforesaid, on occasion and for the purpose of executing a certain recognizance for one Joseph Sneider, at and upon the making of which said affidavit it then and there became and was material that the said H. D. Irwin, Commissioner as aforesaid, should know whether said Harvey Schell owned in fee simple and in his own name and right certain real estate in the said affidavit mentioned and described, and thereupon the said Harvey Schell in consequence and by means of the said willful and corrupt subornation, instigation and procurement of the said Frank Danaher, was in due manner sworn before the said H. D. Irwin, and made oath before him of and concerning the truth of the matters contained in the said affidavit, he, the said H. D. Irwin, then and there being such Commissioner as aforesaid, and having competent authority to administer the said oath to the said Harvey Schell in that behalf. And the said Harvey Schell, so being sworn as aforesaid, then and there in and by his said affidavit willfully, corruptly and

falsely, and contrary to the said oath, did depose and swear, that he, the said Harvey Schell, was the owner in fee simple of the following described real estate, to-wit: No. 2610 East Thirty-eighth Street, in the city of Minneapolis, Minnesota, as in the said affidavit set forth, of and concerning the material matters and figures following, to-wit:

" 'Affidavit of First Surety.

" 'United States of America, District of Minnesota, Fourth Division—ss.:

" 'Harvey Schell, a surety on the annexed recognizance, being duly sworn, deposes and says that he resides at 2221 28th Ave. So. in the city of Minneapolis, in said district, that he is a freeholder in the District of Minnesota, that he is worth the sum of Two Thousand Dollars over and above all his just debts and liabilities, in property subject to execution and sale, and that his property consists of: house and lot at 2610 East 38th Street in the city of Minneapolis, in said District, worth $6,000.00 and clear.

" '[Affiants' signature]    Harvey Schell.
" 'Sworn to and subscribed before me, this 1st day of February, A. D. 1926.
" '[Seal.]            H. D. Irwin,
" 'United States Commisioner as aforesaid.'

"Whereas in truth and in fact the said Harvey Schell, at the time when he was so sworn and made affidavit as aforesaid, did not then own in fee simple and in his own name and right the said real estate, namely, number 2610 East Thirty-Eighth Street, in the city of Minneapolis, Minnesota, and in the said affidavit mentioned and described.

"Whereas, in truth and in fact the said Frank Danaher, at the time when he so suborned, instigated and procured the said Harvey Schell to make oath and affidavit, and to depose and swear falsely as aforesaid, there well knew that the said Harvey Schell did not then verily believe himself to be the owner in fee simple and in his own name and right, of the hereinbefore described real estate; and whereas in truth and in fact the said Frank Danaher did not believe to be true the certain matters which he so suborned, instigated and procured the said Harvey Schell falsely to depose and swear, as hereinabove specified.

"And so the Grand Jurors aforesaid, upon their oaths aforesaid, do present that the said Frank Danaher, in manner and form aforesaid, wilfully and corruptly did suborn, instigate and procure the said Harvey Schell to commit wilful and corrupt perjury;

"Which is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

Inferentially it might be thought that the commissioner was acting under section 591, tit. 18 USCA, but there is no charge or statement in the indictment which discloses that fact. It is not charged or stated that Sneider was being held on a charge of having committed a crime or offense against the United States. That section, so far as material, reads:

"For any crime or offense against the United States, the offender may  *  *  *  by any United States commissioner  *  *  * where he may be found, and agreeably to the usual mode of process against offenders in such State  *  *  *  be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense."

It appeared during the trial, from testimony and the recognizances offered in evidence, that the commissioner was proceeding under this section; but the proof cannot be looked up to to supply a substantive charge that has been omitted, and the question is, whether there was such omission.

There can be no conviction of subornation of perjury without a charge and proof that perjury had been in fact committed, and that defendant procured or induced its commission. Austin v. United States (C. C. A.) 19 F.(2d) 127. In substance, there is no difference between perjury and subornation of perjury. Hammer v. United States, 271 U. S. 621, 46 S. Ct. 603, 70 L. Ed. 1118. And so it is necessary that an indictment for the offense here charged contain the allegations of an indictment for perjury. 2 Bish. New Crim. Law, § 1197; 2 Bish. New Crim. Proc. §§ 1019, 1020. Furthermore, it is a settled and accepted rule that facts material to be charged in an indictment must be stated therein and not be left to surmise or to be reached by way of inference or argument. In United States v. Curtis, 107 U. S. 671, 2 S. Ct. 507, 508, 27 L. Ed. 534, it is said:

"It is fundamental in the law of criminal procedure that an oath before one who has no legal authority to administer oaths of a public nature, or before one who, although authorized to administer some kind of oaths, but not the one which is brought in question, cannot amount to perjury at common law, or subject the party taking it to prosecution for the statutory offense of willfully false swear-

ing. * * * But the statute does mean that the oath must be permitted or required, by at least the laws of the United States, and be administered by some tribunal, officer, or person authorized by such laws to administer oaths in respect of the particular matters to which it relates."

See, also, United States v. George, 228 U. S. 14, 33 S. Ct. 412, 57 L. Ed. 712. The rule is stated in 30 Cyc. p. 1427:

"An indictment for perjury should set forth specifically the occasion of the administration of the oath. It should appear in the indictment that the oath was taken, and the false swearing committed in a judicial proceeding, or on some other lawful occasion."

In Hogue v. United States (C. C. A.) 184 F. 245, 248, the Court of Appeals for the Fifth Circuit in construing these statutes, said:

"Since, as before, the statutes, every indictment for perjury must contain allegations showing (a) judicial proceeding or course of justice; (b) that the defendant was sworn to give evidence therein; (c) the testimony given by him; (d) its falsity; and (e) its materiality to the issue or inquiry. The averments, therefore, are necessarily of two classes: First, those which disclose the foundation for the commission of the offense; and, second, those which charge the offense itself. The first, constituting the inducement, may be general in terms, but the second—the charge of the offense itself—must be direct and specific, intelligible and plain."

In United States v. Cuddy (D. C.) 39 F. 696, 697, it is said:

"The averments in a case of this character are, as said by Mr. Bishop, necessarily of two classes—those which disclose a foundation for the commission of the offense commonly called inducement, and those which charge the offense itself. The latter, being that whereof the defendant is accused, must be direct and specific; but the former may be charged in general terms. 2 Bish. Crim. Proc. § 901 et seq. But, while the matter of inducement may be generally stated, the allegations respecting it must be sufficient to show that the oath was taken before a competent tribunal, officer, or person, and in a case in which the laws of the United States authorize the oath to be taken. Where, as in the present case, the false swearing is alleged to have been committed in a matter or proceeding in open court, the allegations must be sufficient to show that the matter or pro-

ceeding was one in which the court was competent to act. To hold otherwise would be to hold that false swearing, in a matter or proceeding of which the court had no jurisdiction, constitutes perjury, which cannot be affirmed. 2 Bish. Crim. Law, § 1020; 2 Whart. Crim. Law, § 1288 et seq; 2 Bish. Crim. Proc. §§ 905, 910, and numerous cases cited in the note to the case of State v. Shupe [16 Iowa, 36] 85 Am. Dec. 485."

The principle now under discussion was considered in Markham v. United States, 160 U. S. 319, 16 S. Ct. 288, 289, 40 L. Ed. 441. That was an indictment for perjury in giving false testimony in a deposition taken before a special examiner of the Pension Bureau of the United States. In stating the occasion of the false swearing the indictment alleged:

"The matter of the hereinafter mentioned deposition became and was material to an inquiry then pending before, and within the jurisdiction of, the commissioner of pensions of the United States, at Washington, in the District of Columbia, whereupon said William H. Markham did then, at said Bowling Green, willfully and corruptly take a solemn oath before G. C. Loomis, then and there a special examiner of the pension bureau of the United States, and then and there a competent officer and having lawful authority to administer said oath; that a certain written deposition then and there by said Markham subscribed was then and there true."

The indictment proceeded to set forth the question propounded to the witness and his answer, to wit:

"Q. Have you received any injury to forefinger of right hand since the war, or since your discharge from the army? A. No, sir; I never have."

This answer constituted the alleged perjury. The defendant on verdict of guilty moved in arrest of judgment on the ground:

"That the averments did not set forth the proceeding or cause in which the defendant was charged to have given his deposition, or made oath to the statement alleged to be false, in such manner as to show that the deposition and the alleged false statement were material to any inquiry or matter before the commissioner of pensions, nor to what said inquiry related, nor show that Loomis, special examiner, had any lawful authority to swear or require the defendant to swear to the deposition or statement averred to be false, nor for what purpose, nor upon what cause, or investigation of what claim, or of any claim,

pending before any department of the government, or in any court."

Mr. Justice Harlan, in delivering the opinion of the court, first quoted sections 231 and 558, supra (then sections 5392, 5396, Rev. St. U. S.), and said:

"Did the fourth count set forth the substance of the offense charged? It gave the name of the officer before whom the alleged false oath was taken; averred that he was competent to administer an oath; set forth the very words of the statement alleged to have been willfully and corruptly made by the accused; and charged that such false statement was part of a deposition given and subscribed by the accused before that officer, and was material to an inquiry then pending before, and within the jurisdiction of, the commissioner of pensions of the United States. The question propounded to the accused, and to which he was alleged willfully and corruptly to have made a false answer, manifestly pointed to an inquiry pending before the commissioner of pensions, in relation to himself as a former soldier in the army; that inquiry presumably related to a claim by him for a pension on account of personal injuries received by him in the service; and the general charge that the statement was made with reference to a pending inquiry before, and within the jurisdiction of, the commissioner of pensions, in connection with the distinct, though general, averment that such statement was material to that inquiry, was quite sufficient under the statute * * * as it [indictment] charged that such statement was material to an inquiry pending before, and within the jurisdiction of, the commissioner of pensions; and as the fair import of that count was that the inquiry before the commissioner had reference to a claim made by the accused under the pension laws, on account of personal injuries received while he was a soldier, and made it necessary to ascertain whether the accused had, since the war, or after his discharge from the army, received an injury to the forefinger of his right hand—we think that the fourth count, although unskilfully drawn, sufficiently informed the accused of the matter for which he was indicted, and therefore met the requirement that it should set forth the substance of the charge against him.

"It is proper to add that section 1025 of the Revised Statutes [18 USCA § 556], providing that 'no indictment found and presented by a grand jury in any district or circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceedings thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant,' is not to be interpreted as dispensing with the requirement in section 5396 [18 USCA § 558] that an indictment for perjury must set forth the substance of the offense charged. An indictment for perjury that does not set forth the substance of the offense will not authorize judgment upon a verdict of guilty."

The proposition was again considered by the Supreme Court in Hendricks v. United States, 223 U. S. 178, 32 S. Ct. 313, 316, 56 L. Ed. 394. There Hendricks was charged with instigating and procuring one Hawk to appear in person before grand jurors sitting at Portland, in the district of Oregon, as a grand jury of the Circuit Court of the United States for said district, and to testify falsely concerning a homestead entry of public lands. The indictment was challenged by demurrer, which alleged that the matters and facts therein contained were not sufficient in law to constitute a crime; and it was argued that in order to be sufficient it should have stated the particular matter which was being investigated by the grand jury at the time and to which it was claimed the alleged false testimony was material. But the indictment alleged that the grand jury, "among other matters [was], inquiring into certain criminal violations of the laws of the said United States relating to the public lands and the disposal of the same, and the unlawful fencing thereof, which had then lately before been committed within the said district," that defendant caused said Hawk to take his oath before said grand jury and upon his oath so taken to testify in substance and to the effect:

"* * * That when he, the said George W. Hawk, made his application dated October 19, 1898, and filed in the land office of the said United States at The Dalles, Oregon, on October 21, 1898, to enter certain public lands [describing them] as a homestead, under the laws of the said United States concerning homesteads, the same was honestly and in good faith made for the purpose of actual settlement and cultivation, and not for the benefit of any other person, persons, or corporations; that he, the said George W. Hawk, was not acting as agent of any person, corporation, or syndicate in making such entry, nor in collusion with any person, corporation or syndicate to give them the benefit of the land so entered, or any part thereof,

or the timber thereon; that he was not applying to enter the said lands for the purpose of speculation, but in good faith, and to obtain a home for himself; that he had not made, and would not make, any agreement or contract with any person or persons, corporation or syndicate, by which the title which he should acquire from the said United States in the said lands would inure to the benefit of any person except himself, and that he himself paid the fees required by law to be paid upon the filing of such application."

The falsity of Hawk's said testimony is then alleged. The court held that the indictment adequately advised the defendant as to the identity of the proceeding in which perjury was alleged to have been committed.

In Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278, defendants, who were charged with a conspiracy to suborn and induce a large number of persons to go before a United States commissioner and make false statements under oath as to the entry and purchase by them of certain public lands, urged the court to apply the principle here under consideration to that indictment, insisting that it must state all elements essential to the commission of the crimes of subornation of perjury and perjury. But the court held that conspiracy was the gist of the crime there charged and the rule did not apply. However, it clearly appears from the allegations of that indictment, that the occasion was one within the commissioner's power to act and in which a law of the United States authorized an oath to be administered by him.

In United States v. Wilcox, 4 Blatchf. 391, Fed. Cas. No. 16,692, District Judge Hall said on this point:

"It was also objected, upon the argument of the demurrer, that the indictment does not show that the proceeding before the commissioner was one in which an oath was required, so as to bring the case within the 13th section of the act of March 3, 1825 (4 Stat. 118), on which the indictment is founded. In this respect, also, the indictment is bad. It is not enough to allege that the persons named were charged with a crime or offense against a law of the United States, for that is a conclusion of law, but the particular charge should be stated. The act of Congress, before referred to, does not dispense with this statement."

Section 13 of the Act of March 3, 1825 (4 Stat. 118), referred to by Judge Hall, is this, so far as material:

"That, if any person, in any case, matter, hearing, or other proceeding, when an oath or affirmation shall be required to be taken or administered under or by any law or laws of the United States, shall, upon the taking of such oath or affirmation, knowingly and willingly swear or affirm falsely, every person, so offending, shall be deemed guilty of perjury," etc.

In that case the indictment charged the perjury to have been committed on an examination of certain persons charged with crimes or offenses against the laws of the United States, before a named person, "a commissioner of the United States, duly appointed according to law." Here there is not even a general statement that Sneider was being held on a charge of having committed any crime or offense against the United States; nothing to show any lawful ground or reason for his giving a recognizance, and hence the right of the officer taking it to administer an oath to Schell as surety.

It will be observed that Irwin, in signing the jurat to the oath taken by Schell, described himself as "United States Commissioner as aforesaid." But the indictment did not charge that he was a United States commissioner. It charged that he was a "commissioner of the District Court of the United States for the District of Minnesota." There is, so far as we can find, no such officer known to the law. A similar error, held to be fatal, was made in the Wilcox Case. Judge Hall said:

"The allegation is, that Mr. Conkling was a commissioner of the United States; not of the circuit court of the United States, or appointed by the circuit court of the United States. Commissioners of the United States, in the ordinary sense of that term, have not the powers alleged to have been possessed by this commissioner. Although the language of the statute referred to is very broad, I do not think it dispenses with the necessity of setting out the true and proper designation of the court, or the name and official title, designation or character of the officer before whom the oath was administered. This, it strikes me, is of the substance of the offence, and not mere matter of form."

The office of commissioner of the Circuit Court of the United States has been abolished, and the duties which they discharged are now discharged by United States commissioners who are appointed by District Judges for their respective districts. Neither in dis-

charging his duties constituted a court. Todd v. United States, 158 U. S. 278, 15 S. Ct. 889, 39 L. Ed. 982. But their decisions upon a motion for bail and the sufficiency thereof are judicial acts. United States v. Jones, 134 U. S. 483, 10 S. Ct. 615, 33 L. Ed. 1007. As a prerequisite to such action there must be a complaint of some kind charging the party applying for bail with a crime or offense against the United States. Section 591, supra. It is then a cause or proceeding pending before the commissioner within the terms of section 231 supra, in which, it may be said, the commissioner has the lawful right, duty and authority to administer an oath to the surety as to his financial worth.

Perjury, however, may be committed in an ex parte affidavit, under the terms of this section and other statutes. But in such prosecutions the affidavit itself, or independent allegations of the indictment, or both, show the procedure in which the affidavit is lawfully taken, that is, the inducement. See United States v. Nickerson, 17 How. 204, 15 L. Ed. 219; Barnard v. United States (C. C. A.) 162 F. 618; United States v. Hall, 131 U. S. 50, 9 S. Ct. 663, 33 L. Ed. 97; Whiteside v. United States (C. C. A.) 257 F. 509; and there are numerous other like cases. But there is nothing in the affidavits in these counts, or in the charges contained therein, that show any matter or proceeding pending before the commissioner or elsewhere against Sneider, in which a law of the United States authorized the taking of Sneider's recognizance, or the administration of an alleged oath to the surety. It therefore seems that a substantive element of the charge was omitted, and, as said in Markham v. United States, supra, the court was without authority to enter judgments upon the verdicts of guilty. A charge that omits one element of substance is no better than no charge at all, and a conviction thereon violates constitutional guaranties.

■ The clerk of the District Court and his deputy, as well as United States commissioners, are authorized to administer oaths. Section 525, tit. 28, USCA. But neither the clerk nor his deputy is given authority to take recognizances, under section 591, and we know of no other statute that gives him that authority. If application be made to a United States District Judge for bail by one held in custody for any crime or offense against the United States and the District Court be in session, we see no reason why the Judge may not direct the clerk or his deputy to take the oath of a surety to his justification. It was so held in United States v. Evans (C. C.) 2 F. 147. No procedure of that kind is disclosed by this indictment. So far as appears, the deputy clerk took two of the recognizances and in doing so administered the oaths on which the false swearing is based in two of the counts. It seems clear that he acted wholly without authority.

■■ The sufficiency of the indictment was not attacked either by demurrer or by motion to quash, but on the opening of the trial, when the first witness was called, defendant's counsel presented written objections to the introduction of any testimony, one of which was that the indictment did not state a public offense and that the prosecution could not proceed except on an indictment which charged an offense. The court took action on this motion, overruled it and allowed an exception. And then, at the close of all of the evidence for the prosecution, the defendant offered none, counsel for defendant filed a written motion for a directed verdict in favor of defendant on each count, which was overruled, and exception taken. As has been already seen (Markham's Case), if the indictment failed to charge an offense, no formal action on the part of defendant was necessary to save the point. Moreover, where prejudicial error is obvious appellate courts should of their own motion recognize it and give protection against unlawful deprivation of personal liberty. Lamento v. United States (C. C. A.) 4 F.(2d) 901.

■ Had the indictment been good, the court erred in not directing verdicts for the defendant at the close of the testimony. We have searched the record diligently and fail to find one word in all of the testimony indicating in the slightest degree that any of the seven sureties knew before they went to the office of the commissioner or deputy clerk of the court that an oath would be administered to him or that the defendant knew that they would be required to take an oath. No witness testified that anything was ever said by the defendant to the sureties, or by the sureties to him, or by any one else to either, that the sureties would be sworn as to their financial worth. The district attorney seems to have studiously kept away from that vital point. There is no evidence that the defendant knew the sureties would be sworn. The facts in those respects are left wholly to surmise and conjecture. In other words, it is presumed that the defendant knew the sureties would be sworn, and based upon that presumption it is then presumed that Danaher suborned them. In Wagner v. United States,

8 F.(2d) 581, we cited many cases which sustain the undoubted proposition that the basis of a presumption or inference must be a fact, and that one presumption cannot be the basis of another presumption. It is argued that the circumstances strongly indicate that Danaher knew that these sureties, whom he assisted in procuring, would be sworn as to their financial worth when they tendered themselves as sureties. But there is no substantial proof that he did know. The trial court recognized the weakness of the case when it said on the motion for directed verdicts: "If we held to a rule as strict as counsel for defendant suggests, these people could never be apprehended." The proof wholly failed to show that defendant knew they would be sworn as to the property they might claim to own. We realize fully the inexcusable part he took in procuring these straw bails for a price, but that is far short of proving him guilty of subornation. He was not present at the times the sureties were sworn. The nearest approach to making out knowledge on his part was the testimony of one of the two commissioners, who said that he had seen Danaher in the room on one occasion when a recognizance was being taken, he did not know just when that was. Had he been in the room, no one testified that the situation was such that Danaher would have heard what was being said and thus known the import of the transaction. The prosecution insists Danaher's knowledge may be inferred from the circumstances; but from those circumstances it is equally fair and reasonable to infer that he did not know the sureties would be sworn. "Unless there is substantial evidence of facts which exclude every other hypothesis than that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of appellate court to reverse a judgment of conviction. Hart v. United States (C. C. A.) 84 F. 799; Union Pacific Coal Co. v. United States (C. C. A.) 173 F. 737, 740; Wright v. United States (C. C. A.) 227 F. 855, 857; Wiener et al. v. United States (C. C. A.) 282 F. 799, 801; Yusem v. United States (C. C. A.) 8 F.(2d) 6; Ridenour v. United States (C. C. A.) 14 F.(2d) 888." McLaughlin v. United States (C. C. A.) 26 F.(2d) 1, 3; Grantello v. United States (C. C. A.) 3 F.(2d) 117. The sureties testified for the prosecution. They answered freely and fully every question. No one of them was asked whether there had ever been any conversation between them and Danaher, or between them and any one else, about

taking an oath, or whether they knew until the oath was administered that it would be administered. And so the court erred in denying motions to instruct verdicts of not guilty. The words of Mr. Justice Brewer in Clyatt v. United States, 197 U. S. 207, 222, 25 S. Ct. 429, 433, 49 L. Ed. 726, are here most appropriate.

"No matter how severe may be the condemnation which is due to the conduct of a party charged with a criminal offense, it is the imperative duty of a court to see that all the elements of his crime are proved, or at least that testimony is offered which justifies a jury in finding those elements. Only in the exact administration of the law will justice in the long run be done, and the confidence of the public in such administration be maintained."

On this record Danaher's conduct is, of course, highly censurable. He may be a most unworthy citizen, but that affords no reason at all for denying him his liberty.

Reversed and remanded.

STONE, Circuit Judge (dissenting).

The majority opinion finds the indictment fatally defective for three reasons, as follows: (1) Because it does not contain "even a general statement that Sneider [the person bailed] was being held on a charge of having committed any crime or offense against the United States; nothing to show any lawful ground or reason for his giving a recognizance, and hence the right of the officer taking it to administer an oath to Schell as surety"; (2) because it does not sufficiently identify the official status of the "commissioner" before whom some of the oaths were taken; (3) because there was no authority for a deputy clerk of the district court, before whom two of the oaths were taken, to administer such.

The sufficiency of the indictment was not attacked by demurrer or motion to quash. The first suggestion of an attack upon the indictment came early in the examination of the first witness. This took the form of objection to introduction of testimony. The objection was apparently written, and set forth specifically the reasons why the indictment did not state an offense, as follows:

"(A) No allegation as to who the real owner was (the truth of the fact) of the property listed *in any count.*

"(B) No allegation that the witness *knowingly* swore falsely. Only use words *wilfully, corruptly* and *falsely.*

"(C) Eighth (8th) count does not set forth false portion.

"(D) Each count fails to set forth the bond or recognizance of which the alleged false affidavit is a part.

"(E) Each count fails to allege the recognizance in question was completed and accepted."

At the time this motion was made, and to make clear the position of accused, counsel stated his contention as follows: "At this time, your Honor, I wish to file objection against the evidence in this case. I might say, your Honor, that the counts are all the same except the eighth, they are verbatim except the eighth; that is a different count, and that is clearly defective because it doesn't set out the affidavit at all. That is the eighth count. The others are all exactly the same. We are objecting that the indictment doesn't state a public offense and we are objecting to any testimony for the reason that there is no charge in the indictment. Now they don't allege that Mr. Danaher knew it at all. I think that is the element of that indictment. It doesn't state the facts sufficient to constitute the crime. They don't charge him with knowing that this man Swanson or whoever the bond was given by, they don't testify that the bonds were ever signed, if accepted. They don't charge who the real owners of this property was. Mr. Schell may have had a deed to this property. Mr. Bissonnette may have had a deed to the property. Now they haven't alleged that Danaher knew that this man's testimony was false or that his affidavit was to be false. If counsel's opening statement shows that they expect to prove a lot of this stuff by hearsay testimony, certainly the Government can't proceed except on an indictment which charges an offense. Of course if we let down here, and let them put down a lot of this testimony, hearsay and everything else, they might proceed—they might make out a case. That is our position."

At the close of the evidence, a directed verdict was asked upon each count, for the sole reason that "the Government has failed to prove the charge." The second attack upon the indictment appeared in a motion to "set aside and vacate the judgment," which the court treated as a motion for a new trial. This motion is not in the record, but the grounds thereof (in so far as the indictment is concerned) may be inferred from the memorandum of the court in connection with denial thereof. Such memorandum shows no grounds in that motion going beyond the motion filed objecting to introduction of testimony. But one assignment of error touches the indictment, and that one complains *solely* of overruling of the motion objecting to introduction of testimony—the motion being copied therein. The only defects argued, in the briefs or orally, were failure to allege owner of fee of the listed property; failure to allege knowledge, by accused or witness, of falsity of the oath; failure to set forth "in hæc verba the bond or recognizance, of which the alleged affidavit is a part."

Thus it is clear that not one of the grounds urged against the indictment by counsel at any stage of the proceeding is sustained by the majority opinion. It is quite as clear that the grounds upon which this indictment is found fatally defective appear in this case, *for the first time,* in the majority opinion. This situation is recognized in that opinion, but it is said, first, that "no formal action on the part of defendant was necessary to save the point" where the indictment fails to charge an offense, citing Markham v. United States, 160 U. S. 319, 16 S. Ct. 288, 40 L. Ed. 441; and, second, that "where prejudicial error is obvious appellate courts should of their own motion recognize it and give protection against unlawful deprivation of personal liberty," citing Lamento v. United States (C. C. A.) 4 F.(2d) 901.

As to the first ground, I can find no expression in the Markham Case to justify the rule announced, nor were the circumstances there similar to those here present because the defects there relied upon were preserved and presented, not only to the Supreme Court, but to the trial court, in a motion in arrest of judgment. So far as I know, the case before us is the first instance where an appellate court has itself sought out and declared fatal defects in an indictment which had never been found by industrious and competent counsel. If, as said in the Markham Case, "It may well be assumed, after verdict, that all such facts appeared in evidence, and that the accused was not ignorant of the nature of the inquiry to which his deposition related, and to which the indictment referred," there is stronger reason to believe that no prejudice resulted where astute counsel, who combed the indictment for defects, could not find what this court has discovered.

As to the second ground, it is undoubtedly true that this court may notice unpreserved error, but the exercise of this power has been carefully limited by the Supreme Court, which announced it. That power is not to be exercised merely because an error has been committed, nor even where such error is prej-

udicial, in the sense that it would have been ground for reversal had it been properly raised and preserved. That power is to be exercised *only* where an error is not only clear and prejudicial, but where there are "serious errors in the trial of the accused fatal to the defendant's rights," Van Gorder v. United States (C. C. A.) 21 F.(2d) 939, 942, and it is "in the interest of a just and fair enforcement of the laws," same citation. Also see Lamento v. United States, 4 F.(2d) 901, 904, this court; McNutt v. United States, 267 F. 670, 672, this court. In short, unless the entire record convinces that justice requires, there is no reason to notice errors which counsel have not called to the attention of the trial court (USCA tit. 28, § 391; Ripper v. United States, 179 F. 497, 498, this court; Fielder y. United States, 227 F. 832, 833, this court; Lepper v. United States, 233 F. 227, 229 (C. C. A. 4). To my mind this record reveals no reason why this court should go out of its way to reverse this case on grounds never thought of by careful and alert counsel. It serves no end of justice, but, on the contrary, sets free one accused and found guilty of a most serious crime against the administration of justice itself.

However, even if we should search the indictment for defects, those found by the majority do not, in my judgment, exist. The first of these is that the indictment contained no charge that the person bailed "was being held on a charge of having committed any crime or offense against the United States." The indictment clearly and unmistakably charges the perjury to have been committed in the qualification of sureties in connection with "recognizance" of the several persons bailed, and this qualification was alleged as being before a United States commissioner or before a deputy clerk of the United States District Court; also that the commissioner had "competent authority to administer the said oath"; also, except in two counts (the sixth and eighth), the perjured affidavit is set forth and is captioned: "United States of America, District of Minnesota, Fourth Division—ss." No one could read the counts of this indictment without knowing that the person bailed was being held upon a criminal charge by the United States.

The second ground is that the indictment does not sufficiently identify the official status of the "commissioner." The indictment speaks of "a commissioner of the District Court of the United States, for the District of Minnesota." True, the statute says that such officials shall be "known as United States commissioners." USCA tit. 28, § 526. But they are appointed by the several District Courts and serve as officials of the court appointing them. When a man is named and is designated as "a commissioner of the District Court of the United States, for the District of Minnesota," that man and that official status are set forth in a way no one can mistake. Had the indictment copied the above statutory section, it would have added not one single thing to the information of the accused, the trial court, this court, or any one else.

The third defect is that there was no authority for the deputy clerk to administer such oaths. This applies to but two counts (6 and 8). Were the position of the majority sound, it could affect but those two. However, the majority opinion concedes that the court might take such recognizances and might direct the clerk to administer the oath. Be that as it may, deputy clerks are expressly authorized generally (exception Alaska) to administer oaths by section 525, USCA, tit. 28.

It is to prevent just such "defects," as here found fatal, that Congress, in the interest of justice and to prevent criminals escaping punishment through technicalities, enacted section 556 (USCA tit. 18) and, particularly as to perjury, sections 558 and 559. Also see Nurnberger v. United States, 156 F. 721, 725, this court.

The majority opinion finds the evidence was fatally deficient in that it is said it failed to show that the sureties, who committed the perjury, knew they were to be sworn or that appellant knew they were to be sworn as to their financial worth. It was not at all necessary that the sureties should have such knowledge. They are not on trial here. If they did take the oaths and at that time knew they were false, they committed perjury no matter what they might have known or thought, before they were sworn, about the requirement as to an oath. Conceding, for the purposes of this matter, that it is necessary that appellant should know an oath was to be administered, what was the evidence on that point? The evidence clearly shows that appellant made a practice of furnishing worthless bail bonds for a compensation; that he understood the property qualification of the surety would be inquired into at the time such bail was made; that his method was to pay or promise payment to an impecunious person if he would become surety upon a bail bond; that he would furnish such person with a description of property which the person was to claim to own when being so qualified; that he knew the person did not

own or have any interest in such property; that he accompanied several of these sureties to the commissioner's office when they went to make the bonds; that he was in the office when two of the sureties (Schell and Christianson) signed the bonds and immediately thereafter, in the corridor outside the commissioner's office, designated a place to meet Schell to pay him; that he was "frequently" in the commissioner's office where and when bonds were being executed; that the method of the commissioner was to prepare the bond and qualifying affidavit, have the affidavit signed, and then administer the oath as to the truth thereof. The above outline of the evidence on this point seems to me to leave no room for doubt that appellant thoroughly understood the entire procedure.

The majority quotes a statement of the trial court, in denying the motion for directed verdict as revealing that that court was doubtful of the sufficiency of the evidence in the respect pointed out in the majority opinion. I get no such meaning from the statement. The situation in which the statement was made was that a motion to direct a verdict on each count had been made "for the reason that the Government has failed to prove the charge." What the argument on this motion was is not set forth in the record. But thereafter the court made the statement. The entire statement is as follows:

"The Court: Motion denied. I think that the relation of the parties was such that it is a matter for the jury instead of the court. If we held to a rule as strict as counsel for defendant suggests, these people could never be apprehended. They would simply slip along and get by with one bond after the other and anybody with any sense would know that they were trying to impose upon the court and upon the Commissioner by furnishing sureties who had no property at all, and who they knew had no property at all, but, where the evidence couldn't in so many words so indicate, but that isn't necessary; did this man know, or should he have known, that Bissonnette had no property, and was he trying to use it as surety on bond, knowing it was fictitious representation which the surety was making.

"Motion for directed verdict in that count may be denied.

"Motion as to Phosky's count denied."

Obviously, the statement referred to something said in argument, and clearly it referred to remarks concerning but a single count of the seven submitted later to the jury. It is clear that the statement was not made as to the defect found by the majority opinion, because that defect applies to all counts and because such defect was not suggested by counsel. I say it was not suggested, because counsel do not suggest it here. The briefs of appellant show a most diligent combing of the record for error by counsel of evident ability. It never occurred to them to suggest that the evidence did not show that the appellant knew the sureties were to be sworn. It remained for and required a majority of this court to discover that. It is evident that the trial court did not express any doubt as to the knowledge of appellant as to the requirement of the oath for two good reasons: That counsel had never suggested it; and that the evidence convincingly showed such knowledge.

This appellant had a fair trial. He was convicted of having suborned perjury in connection with seven separate bail bonds. He is shown clearly to have engaged in a regular business, for profit, of furnishing worthless bail bonds in a federal court and to have employed perjury by others as a necessary step therein. He has been ably represented by counsel in the trial court and here. No error has been pointed out by them which any member of this court has found well founded. A majority of this court have found other matters deemed fatally erroneous, both in the indictment and in the evidence. I find neither. Also I think it an unwise exercise of discretion even to seek such when the character of this offense and of this evidence is considered. The result is that a dangerous criminal, who struck straight and contemptuously at the administration of justice in a federal court goes free after being proven guilty, and his success may well encourage him and others of his kind.

I dissent from the reasoning as well as the results of the majority opinion.