## PETERSON v. UNITED STATES.
### No. 8546.

Circuit Court of Appeals, Eighth Circuit.
March 8, 1930.

Kleve J. Flakne, of Minneapolis, Minn., and Leslie P. Whelan, of Chicago, Ill., for appellant.

L. L. Drill, U. S. Atty., of St. Paul, Minn., and W. C. Preus, Sp. Asst. to U. S. Atty., of Minneapolis, Minn.

Before STONE and GARDNER, Circuit Judges, and MILLER, District Judge.

GARDNER, Circuit Judge.

The appellant was indicted for subornation of perjury in an indictment containing five counts, returned by the grand jury on October 5, 1926. On arraignment, he pleaded guilty to counts 1, 2, and 3, and upon such plea was sentenced to confinement in the penitentiary for a term of fourteen years. Prior to his arraignment he had been confined in jail from the latter part of June, 1926, until the 27th day of October, 1926, when he entered his plea of guilty. No motion in arrest of judgment nor for a new trial was interposed during the term at which he was sentenced, nor was any other proceeding taken until the 28th of March, 1928, at which time he filed a motion and petition to set aside the judgment. The proceeding is in the nature of a writ of coram nobis, and the petition as filed alleges: (1) That the sentence imposed is excessive and unusual; (2) that defendant's wife is left alone, and because of the excessive sentence her mind has been injured and unbalanced, and it is unsafe to leave her alone; (3) that the defendant has no means on hand to properly care for his wife; (4) that his property is being lost because he is not able to protect his holdings, due to his confinement; (5) that he now seeks to offer new evidence in the form of statements of witnesses, signed by four of the principal witnesses who appeared before the grand jury returning the indictment, it being alleged that these statements clearly show that he is not guilty of subornation of perjury as charged in the indictment upon which he was sentenced. His application closes with a prayer for an order and judgment setting aside and quashing the judgment entered against him on his plea of guilty and declaring it null and void, and directing his release.

In support of his application, he filed and presented certain affidavits of persons now serving penitentiary sentences upon charges of like offenses, seeking to exculpate the defendant of the charges for which he was sentenced, and alleging that defendant had for some time prior to his sentence been addicted to the excessive use of intoxicating liquors, and that he was, during most of said time intoxicated; also an affidavit of a party alleging that defendant's attorney had stated to the affiant that, unless the defendant entered a plea of guilty to the indictment, the assistant United States attorney intended to have the defendant's wife arrested, indicted, tried, and convicted of subornation of perjury and perjury, and that affiant believed the defendant was influenced by such threat, and that, while he was confined in the Hennepin county jail, the affiant thought him to be in an insane state of mind; that affiant "well knows that said Leonard P. Peterson is not guilty of the offenses to which he verily believes that he was induced by threats and fear to enter a plea of guilty."

Defendant presented his own affidavit, in which he charges that the assistant United States district attorney asked him with reference to the connection of his wife with the charges made against him, and that the assistant United States district attorney assured him that upon a plea of guilty he would receive a sentence of not over three years,

and that his own attorney told him that the jury would find him guilty as they did in Danaher's Case (C. C. A.) 39 F.(2d) 325.

In an affidavit presented on behalf of the government, the assistant United States district attorney who had charge of the prosecution and with whom defendant claimed to have had his conversations, denies having had the conversations charged, denies that the defendant was under the influence of intoxicating liquor, and denies having made any threats with reference to the prosecution of the defendant's wife or that he made any promises or representations as to the length of sentence defendant might receive on a plea of guilty. He also states that the defendant was in the Hennepin county jail for several months continuously prior to his arraignment, and that the men who made the affidavits attached to the defendant's motion had all testified before the grand jury consistent with the charges and allegations in the indictment, and that one of said parties had made an affidavit prior to the return of the indictment specifically setting out the facts upon which the charges against the defendant were based.

The judge of the lower court, who sentenced the defendant, and who also presided at the trial of the other defendants mentioned in the proceedings who were charged and convicted of related similar offenses, denied the application, and in a memorandum opinion says that this was one of a number of cases, all before the court at the same time, and that it was clearly shown that in connection with the prosecution of certain criminal cases a thriving industry for the giving of bogus sureties on bonds in criminal cases had grown up and was in active operation; that the defendant was one of those actively engaged therein.

It is further stated in the court's memorandum that "defendant was indicted, as he should have been. Thereafter, there was no unusual haste. Many similar cases were under consideration. Some were more serious than others. Much time and care were given to a proper classification of the grade of guilt and responsibility on the part of each defendant. It seemed apparent and was practically conceded that this defendant was one of the most culpable. He was represented by counsel who carefully looked after and guarded his interests. He finally entered pleas of guilty, as above stated, and was sentenced as set forth in the moving papers herein. Having in mind the very grave character of the crime and the great indulgence so often shown to defendants under our system of parole, the defendant was most fortunate in having the entire indictment disposed of as it was. * * * Some point is made that because of his drinking habits, the mind of the defendant was not clear during the time that he was before the court. There cannot be much to this. Such a condition would not have escaped the attention of everyone at the time. No suggestion of any such condition was then made. Defendant answered in a very proper way, and apparently clearly, a number of questions propounded to him by the court. The conclusion must be that the case presented no unusual features, and that the pleas voluntarily entered, and under the advice of counsel, represented the intelligent admissions of defendant at the time."

The lower court considered the application on its merits. Not having denied the application on the ground that the court was without jurisdiction to entertain such an application, it is not necessary to consider the contention of appellant in support of such jurisdiction. Assuming that the court rightfully took jurisdiction of the application, a matter on which we express no opinion, the decision denying plaintiff's application on the merits involved at most the decision of disputed issues of fact, which, so far as pertinent or material in this proceeding, are as follows: (1) Was the judgment and sentence induced by threats and fear of prosecution of appellant's wife unless he should enter his plea of guilty? The court found as a fact that it was not, and this is amply sustained by the record. (2) Was he improperly persuaded by his own counsel to enter a plea of guilty? The court, familiar with all the facts, found that he was not, and this finding is sustained by the record. (3) Was the defendant's plea of guilty induced by misrepresentations by the assistant United States district attorney as to the degree of sentence he would receive? The court found that it was not so induced, and such finding is amply sustained by the evidence. (4) Was appellant's mind, because of the excessive use of intoxicating liquors, not clear at the time he entered his plea of guilty to the indictment? This question of fact was decided adversely to the defendant by the trial court upon persuasive evidence which amply sustains the court's decision.

It is therefore not necessary to enter the nebulous field of the ancient, if not obsolete,

338

writ of coram nobis. Had the lower court declined to entertain defendant's application, this question might have been presented.

The judgment of the lower court must be and is affirmed.