The United States, Plaintiff, *v.* Lindsey Nickerson, Junior.

The act of congress passed on the 29th July, 1813, (3 Stats. at Large, 49,) enacts 'that the owner of every fishing vessel shall, previous to receiving the allowance mentioned in the act, produce to the collector the original agreement which may have been made with the fishermen, and also a certified copy of the days of sailing and returning, to the truth of which he shall swear before the collector.

These latter words include the first branch, as well as the second branch of the sentence; so that the owner must not only swear to the truth of the certificate, but also to the verity of the agreement with the fishermen.

A person was indicted, in the district court of Massachusetts, for perjury, in swearing falsely to the agreement with the fishermen, and in swearing falsely that three fourths of the crew were citizens of the United States. As the district judge held that the act of congress only required the owner to swear to the certificate of sailing, and not to the agreement with the fishermen, the person was acquitted.

Afterwards, when indicted in the circuit court, this person pleaded his former acquittal. This was a good plea; because the evidence necessary to sustain the indictment, with respect to the fishermen's agreement, might have been given by the United States in the first trial.

With respect to the oath that three fourths of the crew were citizens of the United States, the act of 1813 did not require that oath; but then the indictment did not purport to bring the offence under that act, but referred to the statutes of the United States generally.

This case came up from the circuit court of the United States for the district of Massachusetts, upon a certificate of division in opinion between the judges thereof.

In March, 1854, Nickerson was indicted for perjury, by the grand-jury of the district court of the United States for the district of Massachusetts, which indictment was framed under the act of July 29, 1813, ch. 35, §§ 7, 9; (3 Stats. at Large, 49;) revived February 9, 1816, ch. 14, (3 Stats. at Large, 254.)

By section 7: "The owner of every fishing vessel of twenty tons and upwards, his agent or lawful representative, shall, previous to receiving the allowance made by this act, produce to the collector, who is authorized to pay the same, the original agreement or agreements which may have been made with the

fishermen employed on board such vessel, as is hereinbefore required, and also a certificate, to be by him subscribed, therein mentioning the particular days on which such vessel sailed and returned on the several voyages or fares she may have made in the preceding fishing season, to the truth of which he shall swear or affirm before the collector aforesaid."

Section 9 then provides : That " any person who shall make any false declaration, in any oath or affirmation required by this act, being duly convicted thereof, shall be deemed guilty of wilful and corrupt perjury, and shall be punished accordingly."

At the trial on the indictment, before the district court, the offence set forth was, making a false declaration, under oath, before the collector, that the paper produced and sworn to by the defendant was the original agreement.

The judge of the district court, who tried the case, held that this oath to the original agreement with the fishermen was not required by the act of July 29, 1813, § 7, (3 Stats. at Large, 52.)  That the relative which, in that section, applied to and was satisfied by the oath to the certificate of the particular days on which such vessel sailed and returned, &c. ; and, consequently, no false declaration, in any oath required by that act, was set forth in the indictment ; the only oaths required by the act of 1813 being to the days of sailing and returning, the time employed at sea, and the size of the boat or vessel.

The United States attorney then offered to prove that this was a false swearing, touching the expenditure of public money, under the act of March 1, 1823, § 3, (3 Stats. at Large, 770.) United States v. Bailey, 9 Pet. 238.

But the judge held the evidence inadmissible, and the defendant was acquitted.

In May, 1854, Nickerson was again indicted by the grandjurors of the circuit court, for the crime of perjury, in swearing that the fishermen's agreement produced was the original agreement, when, in fact, it was not ; and also in swearing that three fourths of the crew employed were citizens of the United States, or persons not subject to any foreign prince or state, whereas five out of nine persons employed were subjects of Victoria, queen of Great Britain and Ireland.

Whereupon Nickerson put in a plea setting forth the former in lictment and acquittal.

The district attorney of the United States demurred to the plea, and the judges differed in opinion whether the defendant's special plea aforesaid be good, in bar, to this indictment, and the question was certified to this court.

It was argued by *Mr. Cushing*, (attorney-general,) for the United States, and by *Mr. Lothrop*, for the defendant.

*Mr. Cushing* made the following points : —

1. The false swearing alleged in the two indictments, is not one and the same perjury, at common law; but there are two distinct statute offences : one for making a false declaration in a certain prescribed form of an oath, required under the act of 1813; and the other for falsely swearing in order to effect a specific purpose, under an oath-that may be required, but is not specified in the act of 1823.

2. The defendant could not have been tried under the first indictment, for the crime created by the act of 1823; because, to constitute the statute offence with which he was charged in the first indictment, under the act of 1813, there must be a false declaration made in an oath required by that statute. If the alleged false oath was not required by that act, no offence was set forth in the indictment.

3. So, also, to constitute the statute offence, under the act of 1823, touching the expenditure of public money, there must be a false swearing in an oath legally administered, and required or authorized by law. United States v. Bailey, *supra.*

4. The first indictment charged no false swearing, except in an oath required by the act of 1813. The second indictment, under the act of 1823, does set forth an oath necessary and required, impliedly by law, and expressly by the secretary of the treasury and by the collector, before the public money can be expended to pay the fishing bounty to the owner or agent of a fishing vessel.

5. The indictment, to which the plea of former acquittal is made, further sets forth a false swearing in the oath required by the collector, under the authority of the rules and regulations of the treasury department, in order to satisfy himself that two thirds of the crew of the fishing vessel were citizens of the United States.

This the act of March 1, 1817, makes a prerequisite to obtaining the fishing bounty, that the officers, and at least three fourths of the crew, shall be proved, to the satisfaction of the collector, to be citizens of the United States. 3 Stats. at Large, 351, § 3.

This act does not prescribe an oath, but it constitutes the collector the judge of that fact, and prohibits the expenditure of the public money, by payment of the bounty, unless the collector is satisfied on that point; and hence such rules and modes of proof may be prescribed, including an oath, which are requisite and proper to establish that fact.

The United States *v.* Nickerson.

7. If the district judge erred in deciding that the oath set out in the first indictment was not required by the act of 1813, the defendant cannot avail himself of that error; because it was a ruling in his favor, and against the United States, which could not except, but were bound by it in that cause.

8. If the district judge was right in that ruling, the defendant, who thereupon objected to the admission of evidence, to show another offence of falsely swearing under the act of 1823, cannot avail himself of the plea of former acquittal; because he was acquitted of the offence only set forth in the first indictment, and not of the offence set forth in the second indictment, which is another and different offence.

9. The two statute crimes are different and distinct, and require different averments; because the offence created under the act of 1813 is declared to be wilful and corrupt perjury, whereas the offence created by the act of 1823 is the crime of swearing falsely, touching the expenditure of public money, &c.; and the form, nature, or import of the oath is not prescribed, as it is in the act of 1813; nor is it declared or deemed to be wilful and corrupt perjury, by the act of 1823; but upon conviction of swearing falsely, touching the expenditure of public money, the party so convicted " shall suffer as for wilful and corrupt perjury;" and this prescribes the punishment, and does not define the offence to be perjury, as defined at common law.

10. The courts of the United States, having no common-law jurisdiction of crimes, except statute offences only, must be strictly governed by the statute creating the offence, and cannot go beyond the precise statute offence, which is specifically and formally set forth in the indictment.

11. It is desirable that, in the decision of this cause, the court should pass upon the questions incidentally raised, touching the legality of the oaths required by the treasury department and by collectors, as prerequisites to obtaining, by owners and agents, the bounty allowed to fishing vessels.

Authorities incidental may be referred to in The Boat Swallow, Ware's R. 21; The Harriet, Ib. 343; S. C. 1 Story's R. 251.

*Mr. Lothrop*, for the defendant, made the following points: —
*First Point.* The evidence which is competent and essential to support the present indictment might have been offered in proof, and in support of the former indictment. Regina *v.* Bird, Parke, Baron, 6 Br. Cr. Cas. 201; Act of 30th April, 1790, ch. 9, § 19, (1 Stats. at Large, 117;) 1 Chitty's Crim. L. 276, 281; 1 Starkie's Crim. Plead. 301; Act of Congress July 29, 1813.

ch. 35, (3 Stats. at Large, 49;) Act of Congress March 1, 1817, ch. 31, § 3, (3 Stats. at Large, 351;) Act of Congress March 1, 1823, ch. 37, § 3, (3 Stats. at Large, 771;) Act of Congress March 3, 1825, ch. 65, § 13, (4 Stats. at Large, 118;) United States v. Nickerson, Law Reporter for September, 1854.

*Second Point.* The present indictment contains sundry allegations which do not constitute, if true, the crime of perjury. Coke, 3d Inst. 165; United States v. Bailey, 9 Pet. 238, Opinion of Mr. Justice McLean; United States v. Taylor, Law Reporter for September, 1854, p. 271; 1 Chitty's Cr. L. 295, 396.

Mr. Justice CURTIS delivered the opinion of the court.

This case comes before us upon a certificate of division of opinion by the judges of the circuit court of the United States for the district of Massachusetts.

At the March term, 1854, of the district court of the United States for the district of Massachusetts, Nickerson was indicted for the crime of perjury. The indictment charged, that in order to obtain the allowance of bounty money, on account of the employment of a vessel in the cod fishery, of which vessel he was the agent, he made oath before the collector of the district of Barnstable, where the vessel was enrolled and licensed, that a certain paper, produced by him to the collector, was the original agreement made with the fishermen employed on board the vessel during the fishing season then last past; that three fourths of the crew so employed were citizens of the United States, or not subjects of any foreign prince or state; and that these statements were false, and known to the defendant to be so when he made the oath.

Upon this indictment Nickerson was tried and acquitted.

At the May term, 1854, of the circuit court for the district of Massachusetts, Nickerson was again indicted, and to this last indictment pleaded specially his former acquittal, and the plea was demurred to.

The question raised by this demurrer, and upon which the opinions of the judges were opposed, is, whether the same evidence, which is competent and essential to support the indictment in the circuit court, might have been admitted in support of the former indictment in the district court.

The demurrer admits that the defendant is the same person charged by the former indictment, and that the oath alleged in the former indictment to have been taken, is the same oath alleged in this indictment. It appears from a comparison of the two indictments that the same occasion of taking the oath is alleged in both; that occasion- being to obtain an allowance of money from the United States, as bounty, on account of the

employment of a vessel called The Silver Spring, in the cod fishery, during the season then last past.

Each indictment contains, substantially, the same allegation respecting the authority of the collector to administer the oath; that allegation being that the collector had competent power and authority to administer the same. Under the 19th section of the crimes act of April 30, 1790, 1 Stat. at Large, 116, this averment would let in any legal evidence of the lawful power of the collector to administer the oath.

The false swearing alleged in each indictment is the same, and the only question is, whether the indictment in the district court was so drawn as to preclude the United States from offering evidence to prove that the defendant knowingly and wilfully swore falsely that the paper produced was the original agreement, and that three fourths of the crew were citizens.

The argument is, that the former indictment, by its terms, limited the government to proof of false swearing in an oath required to be taken by the act of July 29, 1813, 3 Stats. at Large, 49; that this act does not require either the verity of the agreement with the crew, or the citizenship of three fourths of the crew, to be sworn to; and consequently, that neither of the perjuries charged could be proved under the former indictment.

The 7th section of the act of 1813 is as follows: " That the owner or owners of every fishing vessel of twenty tons and upwards, his or their agent or lawful representative, shall, previous to receiving the allowance made by this act, produce to the collector, who is authorized to pay the same, the original agreement or agreements which may have been made with the fishermen employed on board such vessel, as is hereinbefore required, and also a certificate to be by him or them subscribed, thereon mentioning the particular days on which such vessel sailed and returned on the several voyages or fares she may have made in the preceding fishing season, to the truth of which he or they shall swear or affirm before the collector aforesaid."

It is argued that this requires an oath to the truth of the certificate only, and not to the verity of the agreement.

This depends upon the meaning of the relative pronoun " which." Does it refer to and include both papers to be produced to the collector, or only one of them? It may refer only to the one last mentioned, or to both. Grammatically it is capable of either construction.

Considering the nature of the act, the objects which congress had in view, and the mischiefs to be guarded against, we are of opinion that it was intended to require an oath to the verity of both papers.

This section of the law is not penal; it is directory merely.

18 *

It requires certain acts to be done in order to obtain an allowance of public money. The nature of the act, therefore, does not require a strict interpretation, rigidly confined to what is so clearly expressed as to admit of no doubt. It calls for such an interpretation as will guard the public treasury from fraud, so far as the language employed by congress, when fairly construed, is capable of doing so.

The inducement to the payment of these bounties was, the public policy of training a body of native seamen, by an industrious pursuit of the cod fishery during a fixed portion of the year. To accomplish this, it was deemed important that the seamen should participate directly in the profits of the voyage, in the manner pointed out by the act of June 19, 1813, 3 Stats. at Large, 2. And accordingly, the 8th section of the act in question provides that no vessel shall be entitled to bounty, unless an agreement should be made with the fishermen in conformity with that act. The production of the agreement was therefore the production of a paper, as essential to the claim as the certificate of the times of the departure and return of the vessel; and the verity of the agreement is as essential to the justice and legality of the claim, and to the accomplishment of the ends designed by congress, as the verity of the certificate. It is apparent, also, that the former, as well as the latter, may be false, and that the collector has no better means of knowledge of the truth or falsehood of the paper purporting to be the agreement, than he has of the truth or falsehood of the certificate. The mischiefs to be guarded against were therefore the same.

The case, therefore, is one where the law requires two documents to be produced to a public officer, to constitute a title to an allowance of public money. The verity of both is essential to the justice and legality of the claim. The officer has no means of testing the verity of either, except what is given by this law. Congress has considered it proper that an oath should be taken by the applicant. The question is, whether this security of an oath was intended to be confined to one of the documents. The language employed is capable of such a construction, but it is also capable of meaning that the security of an oath was to extend to both. In our judgment, the latter is to be deemed to have been intended by congress; and we therefore hold that so much of the first indictment as charged that an oath as to the agreement was required by the act of 1813, was correct in point of law. But this does not dispose of the whole question; because there can be no pretence that the act of 1813 required an oath to the fact that three fourths of the crew were citizens. In point of fact, there was no requirement on the sub-

ject of the citizenship of the crew when the act of 1813 was passed, nor until the act of March 1, 1817, (3 Stats. at Large, 351;) and the argument on the part of the United States is, that as the former indictment was limited to an oath required to be taken by the act of 1813, the defendant could not be tried thereon for false swearing as to the citizenship of the crew. But we are of opinion that the former indictment was not thus limited. The particular allegation supposed to have that effect, is as follows: —

" Which said oath so taken by the said Nickerson, jr., was required to be taken by the owner or agent of said fishing vessel, under and by virtue of an act of congress of the United States of America, approved July 29, 1813, and reënacted February 9, 1816, and in a matter and proceeding then and there required by law, in order to obtain the allowance aforesaid for said fishing vessel, it being then and there material and required by the act aforesaid, and by force of the statutes of the said United States therein provided, in order to obtain said allowance of money, that the owner of said fishing vessel, or his agent or representative, previous to receiving such allowance, should swear as aforesaid to the truth of the aforesaid declarations."

The pleader here not only refers to the act of 1813; but also avers that the oath was taken, " and in a matter and proceeding then and there required by law, in order to obtain the allowance aforesaid for said fishing vessel." It is true, the whole allegation, if it is correctly copied in the record, is somewhat confused, but, according to any construction which we have been able to put upon it, it does not confine the requirement of the oath to the act of 1813 only.

It was not necessary to aver in the indictment what act or acts of congress required the oath to be taken. The averment that it was taken by the owner or agent to obtain an allowance of bounty, and the description of the oath which was taken, and of its occasion, were the only matters of fact necessary to be alleged to show the materiality of the oath, and that it was an oath required by law. The court was bound to take judicial notice of the requirements of all acts of congress respecting it. It was competent for the government, under these averments of facts, to rely on any act of congress which required the oath to be taken, without referring to it.

This was not a question respecting the authority of the collector to administer the oath. That, as has already been observed, was correctly averred in both indictments, pursuant to the act of 1790. And under that general averment of competent authority, any laws and any fact constituting that authority might have been shown. The question here was, whether such

an oath as is described in the indictment, being taken before a collector who had competent authority to administer it, for the purpose of obtaining an allowance of bounty money, was an oath which, if wilfully false, would subject the defendant to be punished as for perjury. And we do not think this question was so narrowed, by the passage above extracted from the former indictment, that evidence of an oath required or authorized by any other act besides that of 1813 could not be given under that indictment; and we order it to be certified accordingly.

### *Order.*

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Massachusetts, and on the point or question on which the judges of the said circuit court were opposed in opinion, and which was certified to this court for its opinion, agreeably to the act of congress in such case made and provided, and was argued by counsel. On consideration whereof it is the opinion of this court that the special plea pleaded by the defendant is a good plea in bar to the indictment; whereupon, it is now here ordered and adjudged by this court that it be so certified to the said circuit court.