ESTATE OF CHARLES LOUIS REIMER, DECEASED, MARTHA J. REIMER, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17323. Promulgated May 31, 1949.

*Donald E. Richard, Esq.,* for the petitioner.
*Clarence E. Price, Esq.,* for the respondent.

OPINION.

ARUNDELL, *Judge*: The sole question herein is whether the 50 per cent addition to the tax for fraud provided by section 293 (b) of the Internal Revenue Code may be imposed against and collected from the estate of a decedent who during his lifetime fraudulently understated his correct net income with intent to evade tax. In the instant case the taxpayer had died more than eight months before the Commissioner made jeopardy assessments against his estate, including therein so-called "fraud penalties."

There is no Federal statute[1] covering the survival of the cause of action provided by section 293 (b) against a taxpayer's estate where proceedings have not been instituted prior to his death. Where no specific provision is made for the survival of a cause of action granted by a Federal statute, the question of whether it survives or not must be determined by an interpretation and application of the rules and policies developed in the Federal law. *Bowles* v. *Farmers Nat. Bank of Lebanon, Ky.*, 147 Fed. (2d) 425; *Dietrich* v. *Greaney*, 309 U. S. 190. As a Federal question, it is governed by the "general law" or common law and not by state survival statutes or state decisions re-

---

[1] See § 955, R. S., 28 U. S. C. A., § 778, and the Act of June 16, 1933, ch. 103, 48 Stat. 311, 28 U. S. C. A., § 780 (a), which were repealed by the Act of June 25, 1948, ch. 646, § 39, 62 Stat. 992, effective Sept. 1, 1948. See § 2404 of new Title 28, Judiciary and Judicial Procedure, and rules 25 and 81 of the Federal Rules of Civil Procedure.

lating to the subject. *Sullivan* v. *Associated Billposters & Distributors,* 6 Fed. (2d) 1000; *Barnes Coal Corporation* v. *Retail Coal Merchants Association,* 128 Fed. (2d) 645; *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corporation,* 315 U. S. 447; *Clearfield Trust Co.* v. *United States,* 318 U. S. 363, 366. It is important to note in this connection that "Whether an action survives depends on the substance of the cause of action, not on the forms of proceeding to enforce it." *Schreiber* v. *Sharpless,* 110 U. S. 76.

Our first inquiry must be into the substance of the Government's right to claim the 50 per cent addition to the tax for fraud. Section 293 (b) appears as section 293 (b) in each of the Revenue Acts of 1936, 1934, 1932, and 1928, and as section 275 (b) in the Revenue Acts of 1926 and 1924. Similar provisions are contained in section 250 (b) of the Revenue Acts of 1921 and 1918, prior to which section 3176 of the Revised Statutes was applied to income taxes. The same provision also appears as section 520 (b) of the Revenue Act of 1932 with respect to gift taxes. All of these sections derive from section 3176 of the Revised Statutes. G. C. M. No. 22326, C. B. 1940-2, p. 159.

The Commissioner, being of the opinion that section 3176 and subsequent sections imposing additions to the tax were penal statutes and that the additions to the tax were penalties inflicted as personal punishment for the failure of the taxpayer to comply with the revenue laws, took the position as late as 1935 that such penalties did not survive the death of the taxpayer and were not collectible from his estate. See L. O. 1091, C. B. I–1, p. 422; G. C. M. No. 9162, C. B. X–1, p. 263; G. C. M. No. 15736, C. B. XIV–2, p. 325. This Court took the same view and in *National City Bank of New York, Executor,* 21 B. T. A. 1080, and *National City Bank of New York, Executor,* 35 B. T. A. 975; affd., 98 Fed. (2d) 93, held that the liability of a taxpayer for the 50 per cent addition to the tax because of fraud did not survive his death.

The Commissioner and the courts, so long as the additions to tax were regarded as penalties, had and still have ample authority to support their holdings that penalties do not survive against the estate of a decedent. *Schreiber* v. *Sharpless, supra; Van Choate* v. *General Electric Co.,* 245 Fed. 120; *Bowles* v. *Farmers Nat. Bank of Lebanon, Ky., supra; Porter* v. *Montgomery,* 163 Fed. (2d) 211.

In 1940 the Commissioner, apparently relying on the decision of the Supreme Court in *Helvering* v. *Mitchell,* 303 U. S. 391, reversed his former position and in G. C. M. No. 22326, *supra,* held that the 50 per cent addition to the tax for fraud imposed by section 293 (b) does not abate upon the death of a taxpayer, but is collectible from his estate and should be asserted in the notice of deficiency. Therein he

expressly revoked G. C. M. No. 9162, *supra*, and modified G. C. M. No. 15736, *supra*.

In 1938 the Supreme Court, in *Helvering* v. *Mitchell, supra,* decided that the assessment of the addition of 50 per cent of any deficiency due to fraud with intent to evade tax under section 293 (b) of the Revenue Act of 1928 was not barred by the acquittal of the defendant on an indictment growing out of the same offense, which indictment was obtained under section 146 (b) of the same Act, 26 U. S. C. A. par. 145 (b). In reaching its conclusion, the Supreme Court stated as follows:

* * * That acquittal on a criminal charge is not a bar to a civil action by the Government, remedial in its nature, arising out of the same facts on which the criminal proceeding was based has long been settled. * * * Where the objective of the subsequent action likewise is punishment, the acquittal is a bar, because to entertain the second proceeding for punishment would subject the defendant to double jeopardy; and double jeopardy is precluded by the Fifth Amendment whether the verdict was an acquittal or a conviction. * * * Unless this sanction was intended as punishment, so that the proceeding is essentially criminal, the double jeopardy clause provided for the defendant in criminal prosecutions is not applicable.

* * * * * * *

Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense. The question for decision is thus whether section 293 (b) imposes a criminal sanction That question is one of statutory construction.

* * * * * * *

The remedial character of sanctions imposing additions to a tax has been made clear by this Court in passing upon similar legislation. They are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud.

* * * * * * *

In sections 276 and 293, 26 U. S. C. A. §§ 276, 293 and notes, it is provided that collection of the 50 per centum addition, like that of the primary tax itself, may be made "by distraint" as well as "by a proceeding in court." If the section provided a criminal sanction, the provision for collection by distraint would make it unconstitutional.

The Supreme Court in its opinion also pointed out that the Circuit Court of Appeals for the Second Circuit, in *Mitchell* v. *Commissioner,* 89 Fed. (2d) 873, was in error when it construed section 293 (b) as "imposing a penalty designed to punish fraudulent tax dodgers" and, as appears from the excerpts of its opinion which we have set forth above, held that the 50 per cent addition to the tax for fraud was remedial in nature and designed to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud.

In applying the principles set out in *Helvering* v. *Mitchell, supra,* it is important to remember that the question of the survival of the "remedial sanction" imposed under section 293 (b) in the event of a

taxpayer's death, was neither before nor considered by the Court in reaching its decision.

Following the decision of the Supreme Court in *Helvering* v. *Mitchell, supra,* and the issuance of G. C. M. No. 22326, *supra,* there appears to have been considerable doubt as to the nature of the 50 per cent addition to the tax due to fraud. In *Myrna S. Howell,* 10 T. C. 859, this Court, citing *Helvering* v. *Mitchell, supra,* held that it was a *civil penalty.* We recently stated, in *Estate of Louis L. Briden,* 11 T. C. 1095, where the same issue was presented as now confronts us, that the decision in *Helvering* v. *Mitchell, supra,* was "dispositive of petitioner's contention that the 50 per cent addition is assessed to punish the taxpayer for his wrongful act" and that it was properly imposed against the decedent's estate.

However, an examination of the authorities convinces us that the denomination of the cause of action given the Government by section 293 (b) against a fraudulent taxpayer as a civil or remedial sanction rather than a penalty is not determinative of the question of its abatement upon the taxpayer's death, and we believe that it is necessary for us to inquire further into its true nature to determine the question.

The Supreme Court, in *Helvering* v. *Mitchell, supra,* relied heavily upon the following language of *Stockwell* v. *United States,* 13 Wall. 531, wherein the Supreme Court said of a provision of the Act of March 3, 1823,[2] which provided that any person who should receive, conceal or buy goods knowing them to have been illegally imported into the United States and liable to seizure under the revenue laws, should pay a sum double the value of the goods:

It must therefore be considered as remedial, as providing indemnity for loss. And it is not the less so because the liability of the wrongdoer is measured by double the value of the goods received, concealed, or purchased, instead of their single value. The act of abstracting goods illegally imported, receiving, concealing, or buying them, interposes difficulties in the way of a government seizure, and impairs, therefore, the value of the government right. It is, then, hardly accurate to say that the only loss the government can sustain from concealing the goods liable to seizure is their single value, or to assert that the liability imposed by the statute of double the value is arbitrary and without reference to indemnification. Double the value may not be more than complete indemnity. * * *

The act of 1823 was, as we have seen, remedial in its nature. Its purpose was to secure full compensation for interference with the rights of the United States.

Further authority for the conclusion that the 50 per cent addition to the tax was designed to compensate or indemnify the United States for losses suffered as a result of a taxpayer's filing of a fraudulent tax return is found in *Bowles* v. *Farmers Nat. Bank of Lebanon, Ky.,*

---

[2] 3 Stat. L. 781.

*supra*, where the addition to the tax imposed under section 293 (b) was distinguished from the liability for triple damages imposed under section 205 (e) of the Emergency Price Control Act of 1942. In that case the court stated:

\* \* \* It was held in *Helvering* v. *Mitchell*, 303 U. S. 391, 401, \* \* \* that a fifty per cent additional tax was remedial because it was provided primarily as a safeguard for protection of the revenue and "to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud"; but this was for expense suffered in the particular case, and in a case where the Government itself was defrauded. In the decisions relied on by the Administrator as holding that exactions of more than compensatory damages do not constitute a penalty, in every case the Government itself or the particular plaintiff had suffered a direct injury. *Helvering* v. *Mitchell, supra;* \* \* \*. In these cases also peculiar facts existed which invested the excess recovery with a compensatory feature.

The plain and unambiguous language of *Helvering* v. *Mitchell*, *supra*, and the other cases cited admits of no construction other than that the 50 per cent addition to the tax for fraud is imposed as a remedial measure to indemnify and compensate the United States for the loss resulting from the wrongful act or tort committed by the taxpayer. Thus, the final question is whether a cause of action of this nature survives against the estate of the tort-feasor under the principles of the common law.

In *Sullivan* v. *Associated Billposters & Distributors, supra*, the court stated the common law rule as follows:

It was a rule of the common law that most causes of action based on contract survived, while most of those founded on tort abated. But the rule was subject to various exceptions. The real test, so far as tort actions were concerned, seems to have been whether the injury on which the cause of action was based affected property rights, or affected the person alone. In the former case the cause of action survived, while in the latter it abated.

Many courts in the past have announced a similar rule, subject to the limitation that an action sounding in tort might be brought by or against a representative of a decedent where the action could be founded on a contract express or implied, and that actions for mere injuries not resulting in profit to the wrongdoer did not survive either his death or that of the injured party. *Philips* v. *Homfray*, 24 Ch. D. 439; *Patton* v. *Brady*, 184 U. S. 608; *United States* v. *Daniel* 6 How. 11; *Henshaw* v. *Miller*, 17 How. 211; *Caillouet* v. *American Sugar Refining Co.*, 250 Fed. 639; and *Bonvillain* v. *American Sugar Refining Co.*, 250 Fed. 641. However, in the more recent decisions of the Federal courts in cases involving actions arising under Federal statutes there has been a departure from this rule, and a cause of action sounding in tort has been held to survive even though no action in contract could be entertained.

The more recent cases have relied upon the rule set out in *Sullivan* v. *Associated Billposters & Distributors, supra*, to the effect that a

cause of action survives if the injury upon which it is based is one affecting property rights as distinguished from an injury affecting the person alone. In *Barnes Coal Corporation* v. *Retail Coal Merchants Association, supra,* an action was instituted to recover triple damages under the Sherman Anti-trust Act. Regarding the survivability of the statutory cause of action involved, the Circuit Court of Appeals for the Fourth Circuit, in an opinion by Judge Parker, expressed its disapproval of the decisions in *Caillouet* v. *American Sugar Refining Co., supra,* and *Bonvillain* v. *American Sugar Refining Co., supra,* and made the following observations:

* * * we think that the rule is to be determined, not merely by a consideration of the state of the common law at the time of the enactment of the statute de bonis asportatis in the reign of Edward III, or even by a consideration of the common law rule at the time of the American Revolution, but in the light of its subsequent development and the decisions interpreting it. It must be remembered, in this connection, that the common law is not a static but a dynamic and growing thing. Its rules arise from the application of reason to the changing conditions of society. It inheres in the life of society, not in the decisions interpreting that life; and, while decisions are looked to as evidence of the rules, they are not to be construed as limitations upon the growth of the law but as landmarks evidencing its development.

\* \* \* \* \* \* \*

The modern rule as to survivability, we think, is that actions for torts in the nature of personal wrongs, such as slander, libel, malicious prosecution, etc., die with the person, whereas, if the tort is one affecting property rights, the action survives. [Citing cases.] Underlying the distinction between actions that die with the person and those that survive is the basic thought that the reason for redressing purely personal wrongs ceases to exist either when the person injured cannot be benefited by a recovery or the person inflicting the injury cannot be punished, whereas, since the property or estate of the injured person passes to his personal representatives, a cause of action for injury done to these can achieve its purpose as well after the death of the owner as before. This rule that the cause of action for injury to property or estate survives is in accord with the rule in equity, where proceedings relate primarily to the protection of property rights.

See also *Moore* v. *Backus,* 78 Fed. (2d) 571; *United Copper Securities Co.* v. *Amalgamated Copper Co.,* 232 Fed. 574; *Imperial Film Exchange* v. *General Film Co.,* 244 Fed. 985; *Williams* v. *Brady,* 232 Fed. 740; *Stephens* v. *Overstolz,* 43 Fed. 465.

A tax is a forced charge, imposition, or contribution; it operates *in invitum* and is in no way dependent upon the will or contractual assent, express or implied, of the person taxed. 51 Am. Jur. 38, § 5; *New Jersey* v. *Anderson,* 203 U. S. 483.

The primary purpose of taxation is to obtain money which the sovereign may use in the performance of its many governmental functions. The direct result of a taxpayer's filing of a fradulent income tax return which understates his true tax liability is to deprive the sovereign of money it is entitled to receive and obligated to collect.

It also makes it necessary for the Government to expend other public funds in order to uncover the fraud and collect the proper amount of tax due. These are monetary losses. Consequently, we feel that the taxpayer's wrongful act is in the nature of an injury to the property of the United States.

The criminal sanctions of section 145 which, upon conviction, subject the taxpayer to a possible fine and imprisonment, of course can not be brought to bear against his estate after his death. The 50 per cent addition to the tax imposed under section 293 (b) is not in issue in the criminal proceedings. This is so because the addition to the tax is not in the nature of punishment imposed for the commission of an offense against the United States, but relates to the right of the sovereign to receive from each individual taxpayer the full measure of the taxes owed, and it is designed solely to indemnify the Government for the monetary loss and damage sustained by reason of its being deprived of its revenue and the expense incurred incident to its collection. It is our understanding from the cases cited that such a cause of action survives against the personal representatives of a fraudulent taxpayer, regardless of whether proceedings were initiated before or after his death.

Petitioner having conceded that the decedent, with intent to evade tax, fraudulently understated his correct net income for each of the years involved, it is our opinion that the respondent's determination as set out in the deficiency notice must be sustained in its entirety and that the petitioner is not entitled to the benefit of the forgiveness features of section 6 of the Current Tax Payment Act of 1943. *Max Cohen*, 9 T. C. 1156, 1167.

Reviewed by the Court.

*Decision will be entered for the respondent.*