Estate of W. Frank Lee, Deceased, W. Frank Lee, Jr., Administrator v. Commissioner. Estate of W. Frank Lee, Deceased, W. Frank Lee, Jr., Administrator, and Anne H. Lee, Surviving Wife v. Commissioner.
Estate of W. Lee v. Commissioner
Docket Nos. 35192, 35197.
United States Tax Court
1953 Tax Ct. Memo LEXIS 159; 12 T.C.M. (CCH) 861; T.C.M. (RIA) 53262; July 31, 1953
*159 For all but two of the fiscal years ending February 28, 1942, to February 28, 1950, decedent's returns disclosed income of less than 50 per cent of the amount determined by respondent by use of the net worth method of reconstructing income. Such books and records as decedent maintained did not correctly reflect his income. The return for the fiscal year ending February 28, 1947, due May 15, 1947, was filed June 2, 1947. 1. Held, respondent was justified in resorting to the net worth method in reconstructing decedent's taxable income for the years in question, and, with minor adjustments, correctly determined the deficiencies for all years in question. 2. Held, further, decedent's returns for the fiscal years ending February 28, 1942, to February 28, 1949, were filed with fraudulent intent to evade tax liability, and respondent properly asserted 50 per cent penalties for those years. 3. Held, further, no reasonable cause was shown for the delinquent filing of the return for the fiscal year ending February 28, 1947, and respondent properly asserted a five per cent penalty for such delinquent filing. *160 Richard Steel, Esq., and William W. Whiting, Esq., 43 Exchange Place, New York, N. Y., for the petitioners. Newman A. Townsend, Jr., Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income tax, and penalties as follows: Docket
Taxable
No.
Year Ended
Income Tax
50% Penalty
5% Penalty
35192
2/28/42
$ 1,178.55
$ 589.28
2/28/43
3,601.10
1,800.55
2/29/44
* 7,495.45
3,844.70
2/28/45
13,946.22
7,107.48
2/28/46
8,083.32
4,041.66
2/28/47
6,553.72
3,276.86
$324.36
2/29/48
7,176.29
3,588.15
35197
2/28/49
3,055.80
1,527.90
2/28/50
1,510.66
*161 The issues to be determined are: (1) was the net taxable income of W. Frank Lee, deceased, understated in returns filed by or for him for the fiscal years ending February 28, 1942, to February 28, 1950, inclusive; (2) if so, were such understatements made with fraudulent intent to evade tax liability under section 293 (b) of the Code, thus removing the bar of the statute of limitations against assessment and collection; (3) if not, did the taxpayer omit from his gross income in either of the taxable years ending February 28, 1946, or February 28, 1947, an amount properly includible therein which is in excess of 25 per cent of the amount of gross income stated in the return for either of said fiscal years, so as to invoke the five-year statute of limitations under section 275 (c) of the Code; and (4) was the failure of W. Frank Lee, deceased, to make and file his Federal income tax return for the fiscal year ending February 28, 1947, within the time prescribed by law due to his willful neglect so as to permit the assessment of a five per cent delinquency penalty under section 291 (a) of the Code. Some of the facts were stipulated. Findings of Fact
*162 The stipulated facts are so found and are incorporated herein. During the fiscal years ending February 28, 1941, to February 28, 1950, inclusive, W. Frank Lee (hereinafter referred to as decedent) and Anne H. Lee were husband and wife, residing together in Washington, Georgia. He died on March 15, 1950. W. Frank Lee, Jr. (hereinafter referred to as Lee, Jr.), his son, is the administrator of his estate. For the fiscal years ending February 28, 1942, to February 29, 1948, inclusive, decedent filed individual income tax returns with the collector of internal revenue for the district of Georgia. For the fiscal years ending February 28, 1949, and February 28, 1950, joint income tax returns were filed with the collector of internal revenue for the district of Georgia by or for decedent and Anne H. Lee, his wife. Decedent, from 1906 until his death, owned and operated the W. Frank Lee Department Store, a retail clothing and dry goods store located in Washington, Georgia. In a proceeding in the United States District Court for the Southern District of Georgia, petitioner was adjudicated an involuntary bankrupt on October 7, 1930. Decedent filed schedules with the court listing *163 total liabilities of $36,821.31 and total assets of $9,418. Unsecured creditors agreed to a composition which involved payments of 15 cents per $1.00 of their claims. The sum of $2,982.82 was paid to discharge unsecured claims totaling $19,889.30. Decedent listed secured and preferred debts, unaffected by the composition, as follows: Taxes
$ 50.00
Wages
313.73
Other preferred debts
329.90
Secured debts
10,901.27
Total
$11,594.90
During the years 1938, 1939, 1940, and 1941, decedent obtained a number of small loans from the Washington Loan & Banking Company, Washington, Georgia. These unsecured loans ranged in size from a minimum of $300 to a maximum of $1,500. From 1934 until his death, the only bank account which decedent maintained was at the Washington Loan & Banking Company, except for one opened for him by Lee, Jr., in the Farmers and Merchants Bank, on the day before his death. The collector of internal revenue for the district of Georgia has no record of income tax returns having been filed by decedent during the years 1930 to 1939, inclusive. Decedent filed a return for the fiscal year ending February 28, 1941, disclosing net income of $3,115.77, *164 and paid a tax thereon of $35.89. Set forth below is taxable net income as reported by decedent on his returns for the fiscal years here in question, and taxable net income as determined by the respondent in deficiency notices: Taxable Net
Taxable Net
Income as
Income as
Fiscal Year
Reported by
Determined by
Ending
Decedent
Respondent
2/28/42
$ 5,126.58
$ 10,784.80
2/28/43
7,217.09
16,780.37
2/29/44
10,026.19
25,203.92
2/28/45
14,769.70
37,987.97
2/28/46
11,774.50
27,167.10
2/28/47
10,871.97
25,109.12
2/29/48
9,685.88
25,567.16
2/28/49
10,135.96
21,681.86
2/28/50
9,419.27
15,776.35
Total
$89,027.14
$206,058.65 Decedent's only reported substantial source of income during the taxable years in question was from the W. Frank Lee Department Store. He also reported stock dividends totaling approximately $17,000 for the taxable years ending February 29, 1944, to February 28, 1950. Decedent reported on his returns gross receipts from the W. Frank Lee Department Store, as follows: Fiscal Year
Ending
Total Receipts
2/28/41
$28,472.00
2/28/42
40,005.04
2/28/43
50,154.64
2/29/44
68,601.80
2/28/45
82,306.54
2/28/46
79,937.65
2/28/47
81,991.26
2/29/48
74,279.13
2/28/49
81,381.12
2/28/50
69,389.10
*165 Respondent used the net worth method in determining the decedent's corrected net income for the years in question. Set forth below is decedent's net worth at the end of the fiscal years in question as determined by the respondent: Fiscal Years
Ending
Net Worth
2/28/41
$ 21,754.92
2/28/42
30,003.83
2/28/43
45,039.80
2/29/44
65,651.44
2/28/45
98,649.78
2/28/46
116,555.37
2/28/47
138,345.46
2/29/48
158,007.75
2/28/49
173,340.12
2/28/50
183,258.06 To the increase in total net worth over each previous year, respondent added net Federal income taxes paid and an amount representing nondeductible living expenses to arrive at decedent's net taxable income for the years in question. Appropriate adjustments were also made for capital gains and losses. The Federal estate tax return filed by Lee, Jr., as administrator of decedent's estate, reported net assets, before taxes, at the time of death as follows: Real Estate
$ 14,320.00
Stocks and Bonds
123,411.40
Mortgages, Notes and Cash
21,270.83
Miscellaneous Property
17,264.20
$176,266.43
Less - Funeral and Adminis-
trative Expenses
10,000.00
Total
$166,266.43
Set forth below, *166 on the basis of acquisition costs, are the net amounts of real estate, U.S. Government bonds, stocks, and notes receivable acquired by decedent in the years in question in which 50 per cent fraud penalties have been asserted, and the total value of such assets held by him at the close of each fiscal year: Fiscal Years Ending
2/28/42
2/28/43
2/29/44
2/28/45
Mortgage Retirement
$ 1,999.25
U.S. Government Bond Pur-
chases
$ 5,980.00
$ 7,500.00
$ 4,500.00
Stock Purchases
560.00
10,966.43
23,743.30
Real Estate Purchases
1,708.25
3,561.00
Net Amount of Assets Ac-
quired
3,707.50
10,101.00
18,466.43
28,243.30
Total Such Assets Held at End
of Fiscal Year
3,707.50
13,808.50
32,274.93
60,518.23
2/28/46
2/28/47
2/29/48
2/28/49
Mortgage Retirement
U.S. Government Bond Pur-
chased
10,000.00
1,500.00
Stock Purchases
18,565.86
15,089.63
4,667.53
13,013.37
Loans
8,230.00
3,040.00
4,990.00
Real Estate Purchases
1,500.00
2,000.00
Net Amount of Assets Ac-
quired
28,565.86
$23,319.63
10,707.53
20,003.37
Total Such Assets Held at End
of Fiscal Year
89,084.09
* 111,803.72
122,511.25
142,514.62
*167 During the years 1943 to 1949, inclusive, decedent maintained a commodity trading account with Orvis Brothers & Company which reflected credit balances at the close of the fiscal years as follows.. Fiscal Year
Ending
Amount
2/29/44
$1,747.01
2/28/45
2,322.01
2/28/46
0
2/28/47
3,257.50
2/29/48
2,958.09
2/28/49
12.32 Such credit balances, however, do not reflect the actual amount of money belonging to the decedent since there was no showing of the existence or non-existence of any open purchase or sale contracts at the close of the fiscal years indicated. The credit or debit balance of a commodity trading account does not have definite value until all open contracts are closed. Single entry books of account were maintained for decedent's retail clothing business, but few books or records of his other financial transactions were kept. Sales and expenses were recorded on the business books as daily totals, and few original supporting *168 records were retained. Cash sales and credit sales were segregated as were collections on accounts receivable, but no breakdown of expense items was recorded. There was no cash account on the books, and decedent kept no other records of the amount of cash that he had on hand at any time. Until June 1947 almost all entries on the business books were made by decedent. Thereafter, the entries were made principally by Lee, Jr., and only upon occasion by decedent. Decedent paid some of the store expenses by check and some by cash. Invoices for merchandise purchased and rent were usually paid by check; and wages, except year-end bonuses, were normally paid in cash. Petitioner had an average of two employees in the store, and from time to time hired additional temporary help. The regular employees received a weekly salary plus an annual bonus based upon their total sales for the year. Decedent took a physical inventory of merchandise on hand in the store every year and kept inventory records. For the taxable years February 28, 1942, to February 28, 1950, inclusive, decedent did not maintain books and records which adequately and correctly reflected his taxable income. Respondent's *169 determination of decedent's net income by use of the net worth method is correct except (1) for minor concessions made by respondent on brief: (a) the value of a Chrysler automobile and 12 head of cattle should have been included among assets as of February 28, 1941; (b) an additional long-term capital gain of $175 should be included in the taxable year ending February 28, 1949; (c) decedent's estimated living expenses should conform with the stipulation; and (2) the credit balance of decedent's commodity trading account maintained with Orvis Brothers & Company did not have sufficiently definite value to be included among assets held on the last day of February 1944, 1945, 1946, 1947, 1948, and 1949. Each return filed by decedent, or by decedent and his wife, for the taxable years February 28, 1942, to 1949, inclusive, was false and fraudulent, with intent to evade tax. Petitioner's income tax return for the taxable year ending February 28, 1947, due on or before May 15, 1947, was delinquently filed on June 2, 1947, without reasonable cause. Opinion RICE, Judge: Where a taxpayer keeps no books of account or where those which he does maintain are inadequate or demonstrably *170 inaccurate, the Commissioner of Internal Revenue is expressly authorized by section 41 of the Internal Revenue Code to make a determination of income by any method which in his opinion clearly reflects such income. Louis Halle, 7 T.C. 245 (1946), affd. 175 Fed. (2d) 500 (C.A. 2, 1949), certiorari denied 338 U.S. 949 (1950); cf. Thomas A. Talley, 20 T.C. - (promulgated June 30, 1953). Respondent considered it necessary to resort to the net worth method in computing decedent's taxable net income for the years in question. We think the record amply justifies his use of such method. The decedent's books of account, his other records, and his tax returns did not adequately and clearly reflect his taxable net income. Such books as he kept pertained only to the clothing business. Sales and expense items were entered therein as daily totals with no breakdown nor detail of any kind being shown. There was no cash account, and only a few original records were retained to support the entries. Of even greater significance, such records as do exist are patently insufficient to explain the discrepancy between net income which decedent *171 reported in his returns for the years in question, and the large sums available to him with which he purchased U.S. Government bonds, stocks, and other tangible assets. The respondent has the burden of proving by clear and convincing evidence that the decedent filed false and fraudulent returns for all but the last year here in controversy. We think the respondent has sustained that burden. The decedent for the nine taxable years in question reported taxable net income totaling $89,027.14. During the same period he acquired real estate, U.S. Government bonds, stocks, and notes receivable, having a cost value of $142,514.62. In many of those years, decedent expended almost twice as much for the purchase of such assets as he reported taxable income on his returns. In addition to these expenditures, decedent, at the close of each fiscal year except 1942, had cash balances ranging from approximately $1,399.79 to as much as $5,338.74. He made substantial income tax payments. The parties have stipulated living expenses of from $2,000 to $3,000 for the years in question. It is inconceivable to us that a person with decedent's long business experience could, through inadvertence or neglect, *172 have omitted reporting such sizeable amounts of taxable income as he must have received. The Court of Appeals for the Sixth Circuit, in Rogers v. Commissioner, 111 Fed. (2d) 987 (C.A. 6, 1940), said: "Fraud cannot be lightly inferred, but must be established by clear and convincing proof. * * * It is conceivable that taxpayers may make minor errors in their tax returns, or, owing to different or contradictory theories of tax computation, calculate returns which differ greatly in result from the Commissioner's assessments. Here petitioners do not have that excuse. Discrepancies of 100% and more between the real net income and the reported income for three successive years strongly evidence an intent to defraud the Government. * * *" In the instant case decedent understated his income on his returns by more than 100 per cent in seven of the eight taxable years for which penalties have been asserted. We feel that the Commissioner was fully justified in asserting the 50 per cent fraud penalty under section 293 (b) of the Internal Revenue Code for the taxable years ending February 28, 1942, to February 28, 1949, inclusive. Arlette Coat Co., 14 T.C. 751 (1950). *173 Petitioners contend that the net worth method of reconstructing income cannot be used against a deceased taxpayer. They cite us no authority for their argument, and we think it is without merit. Estate of Charles Louis Reimer, 12 T.C. 913 (1949), affd. 180 Fed. (2d) 159 (C.A. 6, 1950); Hague Estate v. Commissioner, 132 Fed. (2d) 775 (C.A. 2, 1943), certiorari denied 318 U.S. 787 (1943). Petitioners have further attacked respondent's use of the net worth method of determining the deceased taxpayer's income as arbitrary and inaccurate. We said in Leonard B. Willits, 36 B.T.A. 294, 300 (1937): "* * * While respondent has the burden of proof of fraud, if he is successful in establishing that fact the presumption of correctness of his determination of deficiencies thereupon immediately revives and must be overcome by positive evidence on the part of the petitioner. The statute of limitations does not shift the burden of proof; it merely raises a bar to the assertion by the respondent of any claim for a deficiency in tax; and, once that bar has been removed by proof of fraud, we are where we were before. * * *" Petitioners *174 have not succeeded in establishing the inaccuracy of respondent's determination. Respondent conceded minor corrections on brief, and we have so found in our findings of fact. We also think petitioners demonstrated that the credit balances in the decedent's commodity trading account with Orvis Brothers & Company did not have a sufficiently definite value to be included among his assets for certain of the taxable years in question, and we have so found. Petitioners attempted to establish net worth as of February 28, 1941, far in excess of the amount determined by the respondent. This was done by attempting to trace the source of funds used to acquire the assets held on March 15, 1950. Their ultimate conclusion was that decedent's net worth on February 28, 1941, was $93,012.97. Of this amount, $34,172.98 represented their evaluation of known assets on hand at that date; $6,000 represented assets allegedly on hand after bankruptcy; and $52,839.99 represented alleged savings accumulated during the 10 years following bankruptcy. We do not think this ingenious attempt is sufficient to disprove the basic accuracy of respondent's determination of net worth as of the focal date, February 28, 1941. Decedent *175 came out of bankruptcy in 1930 with secured and preferred debts, unaffected by the composition, totaling $11,594.90. There is no record of any Federal income tax returns filed by him from 1930 to 1939. During the years 1938, 1939, 1940, and 1941, he obtained a number of small unsecured loans from his bank. This does not seem to us to be the record of a taxpayer who supposedly amassed assets within the 10-year period of $93,012.97, in addition to paying the ordinary living expenses of a family of three. Petitioners further contend that fraud penalties cannot be assessed against decedent's estate. The authorities do not sustain that contention. Estate of Charles Louis Reimer, supra; Kirk v. Commissioner, 179 Fed. (2d) 619 (C.A. 1, 1950), affirming Estate of Louis L. Briden, 11 T.C. 1095 (1948). Having found that decedent's returns for the fiscal years ending February 28, 1942, to February 29, 1948, and the joint return for the fiscal year ending June 28, 1949, were filed with fraudulent intent to evade tax, it is unnecessary for use to determine respondent's alternative plea relating to the omission of gross income in excess of 25 per cent *176 for the fiscal years ending February 28, 1946, and February 28, 1947. Petitioners have failed to show us that decedent's return for the fiscal year ending February 28, 1947, due May 15, 1947, and filed June 2, 1947, was not timely filed due to reasonable cause rather than to willful neglect. Plunkett v. Commissioner, 118 Fed. (2d) 644 (C.A. 1, 1941). We have noted the affidavit, dated June 30, 1947, attached to decedent's return for the year in question, attributing the reason for delinquent filing to a change in the fiscalyear closing date and reliance on the advice of a former deputy collector of internal revenue that May 31, 1947, was the due date. We agree with respondent that the facts stated in the affidavit do not show reasonable cause for late filing of the return. See J. S. F. Crayton, 11 B.T.A. 1375 (1928); Eagle Piece Dye Works, 10 B.T.A. 1360 (1928). Decedent's taxable income for the years in question was grossly understated; and his individual and joint returns for all of those years, except the one ending February 28, 1950, were false and fraudulent with intent to evade tax. Respondent was justified in resorting to the net worth *177 method of reconstructing decedent's income; and with the minor adjustments noted herein, the deficiencies for the taxable years ending February 28, 1942, to February 28, 1950, the 50 per cent penalties for the years ending February 28, 1942, to February 28, 1949, and the five per cent penalty for delinquent filing of the return for the year ending February 28, 1947, were correctly determined. Decision will be entered under Rule 50. Footnotes
*. Income and Victory Tax.↩
*. A part of a tract of land and certain lots acquired in earlier years were sold in the fiscal year ending February 28, 1947. The value of the remaining part of the tract and lots has been adjusted to reflect these sales.↩